45 Cal.4th 243 (2008)
CRISTINA VASQUEZ, Plaintiff and Respondent,
v.
STATE OF CALIFORNIA, Defendant and Appellant.
No. S143710.
Supreme Court of California.
November 20, 2008.
*246 Archer Norris, Thomas S. Clifton, Colin C. Munro, Sonny T. Lee; Niddrie, Fish & Buchanan and Martin N. Buchanan for Defendant and Appellant.
Jarvis, Fay, Doporto & Gibson, Jarvis, Fay & Doporto and Andrea J. Saltzman for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Manuel M. Medeiros, State Solicitor General, Tom Greene, Chief Assistant Attorney General, Theodora Berger, Assistant Attorney General, and Edward G. Weil, Deputy Attorney General, as Amici Curiae on behalf of Defendant and Appellant.
*247 Altshuler, Berzon, Nussbaum, Rubin & Demain, Altshuler Berzon, Michael Rubin, Katherine M. Pollock; Law Offices of Robert Berke, Robert Berke, Joseph A. Pertel; Law Offices of Robert S. Gerstein, Robert S. Gerstein; Law Offices of Janet Herold and Janet Herold for Plaintiff and Respondent.
Deborah J. La Fetra for Pacific Legal Foundation as Amicus Curiae on behalf of Plaintiff and Respondent.
The Impact Fund, Brad Seligman, Julia Campins; Litt, Estuar, Harrison & Kitson, Barret S. Litt and Paul J. Estuar as Amici Curiae on behalf of Plaintiff and Respondent.
Richard Rothschild; Law Offices of Richard M. Pearl and Richard M. Pearl for Los Angeles County Bar Association as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION
WERDEGAR, J.
Under the so-called private attorney general statute (Code Civ. Proc., § 1021.5, sometimes hereafter section 1021.5), a court may award attorney fees to the successful party in an action that has resulted in the enforcement of an important right affecting the public interest. In Graham v. DaimlerChrysler Corp. (2004) 34 Cal.4th 553, 560 [21 Cal.Rptr.3d 331, 101 P.3d 140] (Graham), we held the "catalyst theory" permits a court to award attorney fees under section 1021.5 "even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." In so holding, we also adopted "sensible limitations on the catalyst theory" (Graham, at p. 575) to discourage meritless suits motivated by the hope of fees, "without putting a damper on lawsuits that genuinely provide a public benefit" (ibid.).
(1) Today we revisit one of the "limitations on the catalyst theory" adopted in Graham, supra, 34 Cal.4th 553, 575specifically, the rule that the plaintiff in a "catalyst case," to recover attorney fees under section 1021.5, "must have engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation" (Graham, at p. 561). While this is not a catalyst case (see post, at p. 259), defendant argues the rule just mentioned should apply whenever fees are sought under section 1021.5. We hold that no such categorical rule applies in noncatalyst cases. In all cases, however, section 1021.5 requires the court to determine that "the necessity and financial burden of private enforcement ... are such as to make the award appropriate...." (Ibid., italics added.) In making this determination, one that implicates the court's equitable discretion concerning attorney fees, the court properly *248 considers all circumstances bearing on the question whether private enforcement was necessary, including whether the party seeking fees attempted to resolve the matter before resorting to litigation.

I. INTRODUCTION
Defendant and appellant the State of California petitions for review of a decision affirming an order awarding attorney fees under section 1021.5 to plaintiff and respondent Cristina Vasquez.
Proposition 139, known as the Prison Inmate Labor Initiative of 1990 (approved by voters, Gen. Elec. (Nov. 6, 1990), and codified as Pen. Code, § 2717.1 et seq.), instructs the Secretary of the Department of Corrections and Rehabilitation to establish joint venture programs with private employers within state prison facilities to employ inmates (id., § 2717.2; see id., § 5050). The law provides, among other things, that inmates be paid wages "comparable to wages paid by the joint venture employer to non-inmate employees performing similar work for that employer" or wages "comparable to wages paid for work of a similar nature in the locality in which the work is to be performed." (Pen. Code, § 2717.8.) The law also requires the secretary to deduct up to 80 percent of each inmate employee's gross wages for taxes, room and board, restitution to the victims of crime, and support for the inmate's family. (Ibid.)
In August 1999, inmates Charles Ervin and Shearwood Fleming, together with the Union of Needletrades, Industrial and Textile Employees, AFL-CIO (UNITE), filed a complaint stating various causes of action arising out of a joint venture between the State of California and CMT Blues to manufacture clothing at the Richard J. Donovan Correctional Facility in San Diego. As subsequently amended, the complaint named as defendants CMT Blues, its manager Pierre Sleiman, and several corporations that resold CMT Blues' products under their own names. Plaintiffs alleged defendants had committed unfair business practices by failing to pay comparable wages (Pen. Code, § 2717.8) or minimum wages (Lab. Code, §§ 1197, 3351, subd. (e)), by directing inmates to remove and replace "Made in Honduras" labels with others reading "Made in the USA," and by selling these garments to consumers throughout California.
In July 2000, a second amended complaint added Vasquez, the international vice-president of UNITE, as a plaintiff, and added as defendants the State of California and Noreen Blonien, assistant director of the Department of Corrections and Rehabilitation for joint venture programs (collectively hereafter the State). Vasquez, who asserted standing as a taxpayer to prevent the waste of state property (Code Civ. Proc., § 526a), alleged the State had *249 failed to collect and disburse payments due from joint venture employers, including CMT Blues. This failure had occurred, Vasquez alleged, because the State had permitted employers, in violation of Proposition 139, to require inmates to complete unpaid training periods of 30 to 60 days and to pay less than comparable wages.
The State successfully demurred to Vasquez's taxpayer cause of action. Vasquez appealed, and the Court of Appeal reversed. (Vasquez v. State of California (2003) 105 Cal.App.4th 849 [129 Cal.Rptr.2d 701].) The court rejected the State's argument that a taxpayer claim for waste lies only to prevent the unlawful expenditure of funds, and held that such a claim may also challenge the State's failure to collect funds. (Id., at pp. 854-856.)
While Vasquez's appeal was pending, the inmates' claims against CMT Blues were certified as a class action and tried without a jury. In August 2002, the court entered judgment for the plaintiff class, ordering CMT Blues to pay $841,188.44 in wages, liquidated damages, waiting time, penalties and interest. The court also awarded, based on the parties' stipulation, attorney fees of $435,000 and costs of $65,000.
The trial of Vasquez's taxpayer claim commenced in January 2004. The trial ended, however, when the parties agreed to a stipulated injunction, which the court approved on February 17, 2004, and later entered as a judgment. The injunction requires the State to submit written progress reports to the court every 90 days, to obtain wage plans and duty statements from each joint venture employer, to comply with all applicable recordkeeping requirements, to provide payroll data to plaintiff's counsel, to identify comparable wages as required by Proposition 139, to require joint venture employers to notify inmates of their rights under Proposition 139 and the Labor Code, to establish wage-related grievance procedures for inmates, to require joint venture employers to post bonds to secure the payment of wages, to notify the court and plaintiff's counsel of defaults in wage payments, and to take reasonable steps to collect overdue wages. The court retained jurisdiction to enforce, modify and/or dissolve the injunction for a period of two years, subject to extension or termination for good cause, and also retained jurisdiction to award attorney fees.
Vasquez subsequently moved for attorney fees under section 1021.5. On August 11, 2004, the court awarded $1,257,258.60, based on a lodestar amount of $967,122 and a multiplier of 1.3. On October 28, 2004, the court entered judgment on the stipulated injunction and the award of attorney fees.
On December 2, 2004, we filed our decision in Graham, supra, 34 Cal.4th 553, holding that the plaintiff in a catalyst case, to recover attorney fees under *250 section 1021.5, "must have engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation" (Graham, at p. 561).
On December 17, 2004, the State in this case appealed the award of attorney fees. In its opening brief on appeal, the State argued Vasquez was not entitled to recover fees under section 1021.5 because, among other reasons, she had not engaged in a reasonable attempt to settle before resorting to litigation. The Court of Appeal affirmed the fee award. Concerning the State's argument that Vasquez was required to have attempted to settle her claim, the court observed that Graham applied only to catalyst cases, that the instant case was not a catalyst case because Vasquez had obtained a stipulated injunction that was reduced to judgment, and that the State had in any event waived the argument by failing to raise it in the trial court and by failing sufficiently to develop the argument in its opening brief.
The State petitioned for review of the judgment to the extent it awarded attorney fees. We granted review and limited the issue to be briefed and argued as follows: "Does the rule that, in order to receive attorney fees under Code of Civil Procedure section 1021.5, the plaintiff must first reasonably attempt to settle the matter short of litigation, apply to this case? (See Graham[, supra,] 34 Cal.4th 553, 557; Grimsley v. Board of Supervisors (1985) 169 Cal.App.3d 960, 966-967 [213 Cal.Rptr. 108].)"

II. DISCUSSION
(2) Section 1021.5 authorizes a court to "award attorneys' fees to a successful party ... in any action which has resulted in the enforcement of an important right affecting the public interest...." The Legislature enacted the provision to codify the private attorney general doctrine previously developed by the courts. (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (Woodland Hills); cf. Serrano v. Priest (1977) 20 Cal.3d 25, 42-47 [141 Cal.Rptr. 315, 569 P.2d 1303] [approving the doctrine].) The doctrine rests on the recognition that privately initiated lawsuits, while often essential to effectuate important public policies, will as a practical matter frequently be infeasible without some mechanism authorizing courts to award fees. (Graham, supra, 34 Cal.4th 553, 565; see also Maria P. v. Riles (1987) 43 Cal.3d 1281, 1289 [240 Cal.Rptr. 872, 743 P.2d 932].) Accordingly, "`the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.'" (Graham, at p. 565, quoting Maria P. v. Riles, supra, at p. 1289.)
(3) A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied. Thus, a court may award fees only to "a *251 successful party" and only if the action has "resulted in the enforcement of an important right affecting the public interest...." (Ibid.) Three additional conditions must also exist: "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (Ibid.) Section 1021.5 codifies the courts' "traditional equitable discretion" concerning attorney fees (Woodland Hills, supra, 23 Cal.3d 917, 938), and within the statutory parameters courts retain considerable discretion. "[T]he Legislature has assigned responsibility for awarding fees under section 1021.5 `not to automatons ..., but to judges expected and instructed to exercise "discretion."'" (Graham, supra, 34 Cal.4th 553, 575, quoting Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources (2001) 532 U.S. 598, 640 [149 L.Ed.2d 855, 121 S.Ct. 1835] (dis. opn. of Ginsburg, J.).) In deciding whether to award fees, the court "must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (Woodland Hills, at p. 938.) A reviewing court "will uphold the trial court's decision to award attorney fees under section 1021.5, unless the court has abused its discretion." (Graham, at p. 578.)

A. May a Court Award Attorney Fees Under Section 1021.5 Only If the Plaintiff Attempted to Settle Before Resorting to Litigation?

The State argues a court may never award attorney fees under section 1021.5 unless the plaintiff attempted to settle before resorting to litigation. Neither the language of the statute nor the cases interpreting it impose such a categorical requirement. In determining, however, whether "the necessity and financial burden of private enforcement ... are such as to make the award appropriate" (§ 1021.5), a court properly takes into consideration whether the party seeking fees attempted to resolve the matter without litigation.
(4) In construing section 1021.5 we begin with its plain language, affording the words their ordinary and usual meaning, as the words the Legislature chose to enact are the most reliable indicator of its intent. (See People v. Watson (2007) 42 Cal.4th 822, 828 [68 Cal.Rptr.3d 769, 171 P.3d 1101].) (5) The statute's relevant language provides the court may award attorney fees if, among other things, "the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate...." (§ 1021.5, subd. (b), italics added.) This language does not expressly or by necessary *252 implication require that the plaintiff have attempted to settle the dispute; it requires, instead, only that the court determine that private enforcement was sufficiently necessary to justify the award. To be sure, failed attempts to settle can help to demonstrate that litigation was necessary, but the absence of settlement attempts does not logically or necessarily demonstrate the contrary. Depending on the circumstances of the case, attempts to settle may have been futile, exigent circumstances may have required immediate resort to judicial process, or prior efforts to call the problem to the defendant's attention perhaps by other parties or in other proceedingsmay have been rebuffed. The language of section 1021.5 is sufficiently flexible to permit courts to consider these and all other relevant circumstances in determining whether private enforcement was sufficiently necessary to justify awarding fees.[1]
The State points to nothing in the legislative history of section 1021.5 that might support the categorical requirement of a prelitigation settlement demand. Moreover, the Legislature clearly knows how to require prelitigation demands unambiguously when that is what it wishes to do. Many statutes illustrate the point. For example, a plaintiff under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) must notify the defendant of the particular violations alleged and demand correction, repair, replacement, or other remedy at least 30 days before commencing an action for damages. (Id., § 1782, subd. (a)(1)-(2).) The plaintiff in an action based on a health care provider's professional negligence must give the defendant at least 90 days' prior notice before commencing an action. (Code Civ. Proc., § 364, subd. (a).) A private plaintiff under the Safe Drinking Water and Toxic Enforcement Act of 1986 (Health & Saf. Code, § 25249.5 et seq.) must give notice, more than 60 days before commencing an action, to the alleged violator and to the Attorney General and the district attorney, city attorney, or prosecutor in whose jurisdiction the violation occurred. (Id., § 25249.7, subd. (d)(1).) A plaintiff may not sue under the Tort Claims Act (Gov. Code, § 900 et seq.) unless he or she has first presented a written claim to the governing board of the defendant public entity and the board has acted upon the claim or the claim has been deemed rejected. (Id., § 945.4.) The plaintiff in a derivative action against a corporation must allege with particularity his or her efforts to secure the desired relief from the board of directors, or the reasons for not making such efforts, and also allege that he or she has either informed the corporation or its board in writing of the facts underlying each cause of action or delivered a copy of the proposed complaint. (Corp. Code, § 800, subd. (b)(2).) Finally, the plaintiff in an action for libel in a newspaper or slander by radio broadcast may recover only special damages unless he or she first demands a correction. (Civ. Code, § 48a, subd. 1.)
*253 (6) Thus, section 1021.5 as written does not require prelitigation demands, even though the Legislature is familiar with the language that will create such a requirement and has used such language on many occasions. Under these circumstances, our own views concerning the theoretical desirability or value of such a categorical requirement are beside the point. In construing this, or any, statute, our office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language. (Doe v. City of Los Angeles (2007) 42 Cal.4th 531, 545 [67 Cal.Rptr.3d 330, 169 P.3d 559].)
We have not interpreted section 1021.5 as imposing a prelitigation settlement demand requirement in noncatalyst cases. In Graham, supra, 34 Cal.4th 553, we did require prelitigation demands, but only in catalyst cases. The question before us was the continuing viability of the catalyst theory, in other words, whether section 1021.5 permitted an award of attorney fees, as some courts had concluded, "even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (Graham, at p. 560.) We held the catalyst theory "should not be abolished but clarified." (Ibid.) To award fees in catalyst cases, we reasoned, posed a greater risk of rewarding opportunistic litigation than to award fees in cases that end with court-ordered changes in the parties' legal relationships, because a defendant's voluntary decision to change its behavior necessarily raises the question whether the plaintiff's legal work in fact caused the change and thus deserves to be rewarded with fees. On the other hand, to have abolished the catalyst theory would have deterred attorneys from taking meritorious public interest litigation by permitting defendants, even after tenacious litigation, to avoid paying fees by providing relief voluntarily just before being ordered to do so by the court. (Id., at pp. 574-575.) To avoid subjecting public interest litigation to "this increased risk ... [without] rewarding a significant number of extortionate lawsuits," we "adopt[ed] sensible limitations on the catalyst theory that discourage the latter without putting a damper on lawsuits that genuinely provide a public benefit." (Id., at p. 575, italics added.) We later summarized those limitations as follows: "In order to obtain attorney fees without such a judicially recognized change in the legal relationship between the parties, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense ...; and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (Tipton-Whittingham v. City of Los Angeles (2004) 34 Cal.4th 604, 608 [21 Cal.Rptr.3d 371, 101 P.3d 174] (Tipton-Whittingham).)
*254 That we intended to impose these limitations, including the prelitigation demand requirement, only in catalyst cases is clear from our discussion of the point in Graham, supra, 34 Cal.4th 553. There we wrote: "In addition to some scrutiny of the merits, we conclude that another limitation on the catalyst rule proposed by the Attorney General, appearing as amicus curiae, should be adopted by this court. The Attorney General proposes that a plaintiff seeking attorney fees under a catalyst theory must first reasonably attempt to settle the matter short of litigation. (See Grimsley v. Board of Supervisors[, supra,] 169 Cal.App.3d 960, 966-967....) We believe this requirement is fully consistent with the basic objectives behind section 1021.5 and with one of its explicit requirementsthe `necessity ... of private enforcement' of the public interest. Awarding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation does not advance that objective and encourages lawsuits that are more opportunistic than authentically for the public good. Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time. (See, e.g., S.D. v. Faulkner [(S.D.Ind. 1989)] 705 F.Supp. [1361,] 1363 [letter notifying defendants of plaintiffs' grievances, plus discussions over two-month period]; see also Garrison v. Board of Directors (1995) 36 Cal.App.4th 1670, 1676 [43 Cal.Rptr.2d 214] [Pub. Resources Code, § 21177, subd. (b) requires California Environmental Quality Act litigants to inform agency of objections before litigation to give agency opportunity to respond].) What constitutes a `reasonable' time will depend on the context." (Graham, supra, 34 Cal.4th 553, 577, italics added.)
(7) This passage from Graham, supra, 34 Cal.4th 553, does not hold or, given its context, even suggest that the plaintiff in a noncatalyst case must make a prelitigation settlement demand in order to preserve the right to recover fees under section 1021.5. The question was not before us, and "`[i]t is axiomatic that cases are not authority for propositions not considered.'" (People v. Avila (2006) 38 Cal.4th 491, 566 [43 Cal.Rptr.3d 1, 133 P.3d 1076], quoting People v. Ault (2004) 33 Cal.4th 1250, 1268, fn. 10 [17 Cal.Rptr.3d 302, 95 P.3d 523].)
(8) If we had in Graham, supra, 34 Cal.4th 553, described the prelitigation demand requirement in catalyst cases as compelled by the language of section 1021.5, then the case for applying the same requirement to all fee awards under the statute would be stronger. But in Graham we did no such thing. Instead, we described the requirement as "fully consistent with the basic objectives behind section 1021.5 and with one of its explicit requirementsthe `necessity ... of private enforcement' of the public interest." (Graham, at p. 577, italics added.) That a rule adopted by this court to guide *255 the exercise of judicial discretion is consistent with a statute does not mean the rule is compelled by the statute. As explained above, the language of section 1021.5 cannot fairly be read as requiring prelitigation demands.
That we did not in Graham, supra, 34 Cal.4th 553, derive the catalyst-case demand requirement from the language of section 1021.5 is also clear from Graham's companion case, Tipton-Whittingham, supra, 34 Cal.4th 604. In Tipton-Whittingham, we held that plaintiffs seeking attorney fees under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; hereafter the FEHA) under the catalyst theory must have attempted to settle before resorting to litigation, even though the FEHA's provision concerning attorney fees (id., § 12965, subd. (b)),[2] in contrast to section 1021.5, contains no reference to "the necessity ... of private enforcement" (Code Civ. Proc., § 1021.5). Rather than deriving the demand requirement from the language of the FEHA (Gov. Code, § 12965, subd. (b)), which would have been impossible, we simply imposed the requirement "[f]or the reasons explained in ... Graham" (Tipton-Whittingham, at p. 608), namely, that the catalyst theory entailed risks and benefits that, on balance, justified the adoption of "sensible limitations on the catalyst theory that discourage [extortionate suits] without putting a damper on lawsuits that genuinely provide a public benefit" (Graham, at p. 575, italics added).
In the four years since we decided Graham, supra, 34 Cal.4th 553, no California court has applied Graham's demand requirement in a noncatalyst case. In 2005, one federal district court relied on Graham by analogy to impose a prelitigation demand requirement on motions seeking attorney fees under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq. (ADA); see id., § 12205 [attorney fees]). (Doran v. Del Taco, Inc. (C.D.Cal. 2005) 373 F.Supp.2d 1028, 1031-1034 (Doran).) But the district court's decision was reversed for that reason. The plaintiff in Doran, who had encountered barriers to his wheelchair in the defendant's restaurants, sued under the ADA and then settled his claims in an agreement designating him as the prevailing party for purposes of attorney fees.[3] The district court, without noting that we had described the demand requirement as a "limitation *256 on the catalyst rule" (Graham, at p. 577), misread Graham as "adopt[ing] the view that, to recover attorneys' fees in a private attorney general case, a plaintiff must have engaged in a reasonable attempt to settle his or her dispute with the defendant before litigation." (Doran, supra, 373 F.Supp.2d 1028, 1032.) Purporting to adopt a similar rule as a matter of federal law under the ADA, the district court denied the plaintiff's motion for fees. (Doran, at pp. 1033-1034.) The Ninth Circuit reversed, holding that the district court had "denied fees by subjecting [the plaintiff] to a requirement not found in the ADA or the case law." (Doran v. Del Taco, Inc. (9th Cir. 2007) 237 Fed.Appx. 148, 149.)
The State argues that a 1985 lower court decision, Grimsley v. Board of Supervisors, supra, 169 Cal.App.3d 960 (Grimsley), established the general rule that no plaintiff may ever recover fees under section 1021.5 without having attempted to settle before resorting to litigation, and that 19 years later in Graham we merely "applied the holding of Grimsley to catalyst cases." Nothing in Graham, supra, 34 Cal.4th 553, however, suggests we believed that a generally applicable demand requirement existed or that we were merely applying a generally applicable requirement to catalyst cases. Instead, in announcing the demand requirement we described it as a "limitation on the catalyst rule." (Id., at p. 577, italics added; see also id., at p. 575 ["limitation[] on the catalyst theory"].) Nor did we discuss Grimsley in our opinion; we cited the case without comment in describing the Attorney General's suggestion that we adopt a demand requirement in catalyst cases. (Graham, at p. 577.)
The plaintiff in Grimsley, supra, 169 Cal.App.3d 960, sought attorney fees under section 1021.5 after winning a judgment setting aside a county's approval of a general plan and mandating compliance with certain statutory procedural requirements the county had neglected. The trial court denied the motion for fees, reasoning that the plaintiff had won "`on the narrowest grounds'" (Grimsley, at p. 965), had brought about no substantive change in the general plan, and had not enforced an important right affecting the public interest, as required by section 1021.5 (169 Cal.App.3d at p. 965). On appeal, the reviewing court affirmed, emphasizing that trial courts' decisions concerning fees under section 1021.5 are "discretionary" (Grimsley, at p. 965) and "`may be guided by equitable principles'" (ibid., italics added). Applying its equitable discretion to the facts of the case, the Court of Appeal concluded that "it [was] a near certainty that had Grimsley timely pointed out to an appropriate county official or agency, the respects in which [the relevant procedural statutes] had not been followed, appropriate corrective action would have been promptly forthcoming." (Id., at p. 966, italics added.) The Grimsley court concluded its analysis by holding that "attorney fees under ... section 1021.5, will not be awarded unless the plaintiff seeking *257 such fees had reasonably endeavored to enforce the `important right affecting the public interest,' without litigation and its attendant expense." (Ibid.)
As we have explained, section 1021.5 does not require prelitigation settlement demands in noncatalyst cases. To the extent Grimsley, supra, 169 Cal.App.3d 960, might be read to interpret the statute differently, the decision would be incorrect. No opinion published in the 19 years between Grimsley and Graham, supra, 34 Cal.4th 553, however, cites Grimsley as authority for denying a motion for attorney fees under section 1021.5 on the ground that the plaintiff failed to make a prelitigation settlement demand. Only one decision published before Graham even cites Grimsley on this point, and the court in that case declined to rely on Grimsley as a basis for withholding fees. (Phipps v. Saddleback Valley Unified School Dist. (1988) 204 Cal.App.3d 1110, 1123, fn. 9 [251 Cal.Rptr. 720].)
(9) Grimsley, supra, 169 Cal.App.3d 960, does usefully illustrate the narrower principle that a court, in exercising its equitable discretion concerning attorney fees under section 1021.5, properly takes into consideration whether the party seeking fees attempted to resolve its dispute before resorting to litigation. Grimsley thus restates the statutory requirement that the party seeking fees under section 1021.5 must demonstrate that "the necessity and financial burden of private enforcement ... are such as to make the award appropriate...." (§ 1021.5, subd. (b).) As the Grimsley court correctly observed, "`courts may be guided by equitable principles when awarding attorney's fees.'" (Grimsley, at p. 965, quoting Harvard Investment Co. v. Gap Stores, Inc. (1984) 156 Cal.App.3d 704, 717 [202 Cal.Rptr. 891]; see also Woodland Hills, supra, 23 Cal.3d 917, 938 [§ 1021.5 codifies courts' traditional equitable discretion]; Graham, supra, 34 Cal.4th 553, 575 [judges are expected to exercise discretion under § 1021.5].) While we did not in Graham, supra, 34 Cal.4th 553, go so far as to require prelitigation settlement demands in noncatalyst cases, we acknowledged the general principle that prelitigation efforts to resolve a dispute, or their absence, properly inform the court's decision whether to award fees under section 1021.5. As we explained, "[a]warding attorney fees for litigation when those rights could have been vindicated by reasonable efforts short of litigation does not advance [section 1021.5's] objective and encourages lawsuits that are more opportunistic than authentically for the public good." (Graham, at p. 577.)
Other decisions also recognize that prelitigation efforts to resolve a dispute properly inform a court's exercise of discretion under section 1021.5. The court in Baxter v. Salutary Sportsclubs, Inc. (2004) 122 Cal.App.4th 941 [19 Cal.Rptr.3d 317], for example, affirmed an order denying attorney fees to a plaintiff who had successfully sued a health club to require trivial changes in its membership contracts, both because the suit had conferred no benefit on *258 the public (id., at p. 946) and because the litigation did not appear to have been necessary. Concerning the suit's necessity, the court found "no evidence that [the plaintiff had] notified [the defendant] of the deficiencies in its contracts, or demanded their correction, before filing this action. Since [the defendant] corrected those minor deficiencies shortly after the suit was filed, it appears the litigation and the consequent attorney fees were largely, if not entirely, unnecessary." (Id., at pp. 946-947, fns. omitted.)
Similarly, the court in Schwartz v. City of Rosemead (1984) 155 Cal.App.3d 547 [202 Cal.Rptr. 400], affirmed an order denying the plaintiff's motion for fees after the plaintiff successfully sued to require a city to conduct environmental review of a plan to construct a cogeneration plant on property adjacent to his own. The court reached this conclusion both because the financial burden the plaintiff undertook in suing was not out of proportion to his personal interest in the case (id., at p. 559), and also because the plaintiff had neglected his statutory duty to inform the Attorney General of the action within 10 days of its filing (id., at pp. 560-561; see Code Civ. Proc., § 388; Pub. Resources Code, § 21167.7). While the relevant statutes did not make such notification a prerequisite to recovering fees, the plaintiff's failure to give notice tended to show that private enforcement had not been necessary: "If the Attorney General had been promptly notified of [the plaintiff's] action and had decided to intervene, [the plaintiff] may not have been required to pursue his lawsuit to the extent he ultimately did. The service of pleadings on the Attorney General has the effect of informing that office of the action and permits the Attorney General to lend its power, prestige, and resources to secure compliance with CEQA and other environmental laws, perhaps without the necessity of prolonged litigation. If the Attorney General is properly served and elects not to intervene, then a plaintiff's pursuit of a lawsuit becomes presumptively `necessary.'" (Schwartz v. City of Rosemead, supra, at p. 561.)
(10) The State argues that policy considerations weigh against adopting different rules for catalyst and noncatalyst cases. The State suggests that a uniform demand requirement would encourage settlements, which the law generally favors (Folsom v. Butte County Assn. of Governments (1982) 32 Cal.3d 668, 677 [186 Cal.Rptr. 589, 652 P.2d 437]), and that different rules might create confusion for plaintiffs, who cannot know in advance whether any given case will settle and thus become a catalyst case subject to Graham, supra, 34 Cal.4th 553. Our holding, however, neither discourages settlement nor creates confusion. As we have explained, settlement efforts (or their absence) are relevant in every case to show that "the necessity and financial burden of private enforcement ... are such as to make the award appropriate...." (§ 1021.5, italics added.) In assessing such information in a particular case to determine whether private enforcement was sufficiently necessary to justify an award of fees, the trial court exercises its equitable *259 discretion in light of all the relevant circumstances.[4] That a plaintiff for tactical reasons might choose not to propose, or not to accept, a reasonable settlement offer is thus, in every case, a circumstance that potentially weighs against an award of fees. In Graham, we simply identified a set of cases at one end of the equitable spectrum that appeared to justify a bright-line rule because, in those cases, no court-ordered change in the parties' legal relationship exists to show that the public benefit supposedly meriting fees was caused by the plaintiff's litigation rather than by the defendant's voluntary action.
(11) For all of these reasons, we answer in the negative the question on which we granted review: No rule applicable to this case required plaintiff, in order to recover attorney fees under Code of Civil Procedure section 1021.5, first to attempt to settle the matter short of litigation.[5]

B. This Is Not a Catalyst Case.

The State argues in the alternative that we should treat this case as a catalyst case and, thus, hold that the prelitigation settlement demand requirement adopted for such cases in Graham, supra, 34 Cal.4th 553, 577, applies. The argument lacks merit.
While we did not in Graham, supra, 34 Cal.4th 553, expressly define "catalyst case," a definition of the term is necessarily implicit both in Graham and in its companion case, Tipton-Whittingham, supra, 34 Cal.4th 604. In Graham, we described "the catalyst theory" as permitting attorney fees to be awarded "even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (Graham, at p. 560, italics added.) Similarly, in Tipton-Whittingham we held that Graham's "limitations on the catalyst theory" (Graham, at p. 575) set out the factual prerequisites that a plaintiff must establish "[i]n order to obtain attorney fees without ... a judicially recognized change in the legal relationship between the parties...." *260 (Tipton-Whittingham, at p. 608, italics added.)[6] Accordingly, and of necessity, a plaintiff who has not succeeded in obtaining "a judicial resolution" (Graham, at p. 560) or "a judicially recognized change in the legal relationship between the parties" (Tipton-Whittingham, at p. 608) must obtain attorney fees under the catalyst theory, or not at all.
This case is not a catalyst case because Vasquez successfully obtained a stipulated injunction that was entered as a judgment and thus brought about a judicially recognized change in the parties' legal relationship. (See Tipton-Whittingham, supra, 34 Cal.4th 604, 608.) As noted, the stipulated injunction imposes substantial continuing obligations on the State with respect to its joint venture programs with private employers. (See ante, at p. 249.) Cases decided since Tipton-Whittingham and Graham, supra, 34 Cal.4th 553, in which the plaintiffs have obtained injunctions or stipulated injunctions have not been treated as catalyst cases. (County of Colusa v. California Wildlife Conservation Bd. (2006) 145 Cal.App.4th 637, 657-658 [52 Cal.Rptr.3d 1] [preliminary injunction and stay]; Lyons v. Chinese Hospital Assn. (2006) 136 Cal.App.4th 1331, 1341-1342, 1345-1348 [39 Cal.Rptr.3d 550] [stipulated judgment and injunction].) A stipulated injunction approved by a court and entered as a judgment is, in effect, a consent decree. Even the federal courts, which reject the catalyst theory, recognize a consent decree as a sufficient basis for awarding attorney fees. (Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, supra, 532 U.S. 598, 604; see also Graham, at p. 576, fn. 7.)
The State, citing Westside Community for Independent Living, Inc. v. Obledo (1983) 33 Cal.3d 348, 352 [188 Cal.Rptr. 873, 657 P.2d 365], contends that a catalyst case is simply one in which "`relief is obtained through a "voluntary" change in the defendant's conduct, through a settlement, or otherwise.'" The State points to its voluntary conduct in agreeing to the stipulated injunction and in beginning, however slowly and incompletely, to implement the requirements of Proposition 139 before Vasquez became a party to the instant litigation. We have, however, never adopted the formula the State offers as the definition of a catalyst case. In Westside Community, we held simply that a voluntary change by the defendant can justify an award of attorney fees "where `plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought....'" (Westside Community, at p. 353, quoting Robinson v. Kimbrough (5th Cir. 1981) 652 F.2d 458, 465.) We quoted the same language in Graham, supra, 34 Cal.4th 553, 567, to make the same point. In neither case, however, did we hold that a case in *261 which the plaintiff has successfully obtained a judicially recognized change in the parties' legal relationship must be treated as a catalyst case simply because the defendant took some voluntary step towards resolving the litigation.
Accordingly, we agree with the Court of Appeal that this is not a catalyst case and that the "limitations on the catalyst theory" adopted in Graham, supra, 34 Cal.4th 553, 575-577, do not properly apply here.

III. DISPOSITION
The judgment of the Court of Appeal is affirmed.
George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.
NOTES
[1] In determining whether enforcement was sufficiently necessary to justify fees, the court also considers "the necessity of private, as compared to public, enforcement...." (Woodland Hills, supra, 23 Cal.3d 917, 941, italics added.)
[2] Government Code section 12965, subdivision (b), provides in relevant part: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity."
[3] The federal courts have not awarded attorney fees under the catalyst theory since 2001, when the high court rejected that theory in Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, supra, 532 U.S. 598, 605-606. The court in Doran, supra, 373 F.Supp.2d 1028, relied on a Ninth Circuit decision holding that a settlement agreement, as a legally enforceable instrument, can serve as a proper basis for awarding fees under federal law even after Buckhannon. (Barrios v. California Interscholastic Federation (9th Cir. 2002) 277 F.3d 1128, 1134, fn. 5, cited in Doran, at p. 1029.)
[4] We presume the trial court, in exercising its discretion to award fees, was aware of the requirements of section 1021.5 and specifically of the requirement that "the necessity and financial burden of private enforcement ... [be] such as to make the award appropriate." (Id., subd. (b).) The State does not argue to the contrary, except to urge that section 1021.5 requires prelitigation settlement demands in every case.
[5] Because section 1021.5 imposes no categorical settlement demand requirement, we need not consider whether any such requirement would admit an exception for futility. However, the claim that settlement efforts would have been futile is logically relevant to a trial court's determination of the question whether private enforcement was sufficiently necessary to justify an award of fees.
[6] The quoted language from Tipton-Whittingham, supra, 34 Cal.4th 604, 608, derives indirectly from the high court's definition of the term "prevailing party" in Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, supra, 532 U.S. 598, 604, 605. (See Graham, supra, 34 Cal.4th 553, 569-570.)