Filed 11/17/14  AG Land Trust v. Marina Coast Water Dist. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AG LAND TRUST, | H039559 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. M105019) |
| v. | |
| MARINA COAST WATER DISTRICT, | |
| Defendant and Appellant. | |

## I.  INTRODUCTION

In this CEQA[1] action, respondent Ag Land Trust, a nonprofit group interested in preserving Monterey County farmland, challenged Marina Coast Water District's approval of the Regional Desalination Project by filing a petition for a writ of mandate in the superior court.  After a court trial, the trial court granted the first amended petition for writ of mandate, entered judgment in Ag Land Trust's favor, and issued a peremptory writ of mandate directing Marina Coast Water District (Marina Coast) to set aside its approval of the Regional Desalination Project.

Marina Coast appealed and in this court's prior decision, *Ag Land Trust v. Marina Coast Water Dist.* (Aug. 26, 2013, H038550) [nonpub. opn.] (*Ag Land Trust I*), the appeal was determined to be moot.  This court also determined that the appropriate

---

[1] California Environmental Quality Act, Public Resources Code section 21000 et seq.

disposition under the circumstances was to reverse the judgment with directions to the trial court to dismiss the petition for a writ of mandate as moot. (See *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 (*Paul*); *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 944-945 (*Coalition for a Sustainable Future*).)

While Marina Coast's appeal from the judgment was pending, the trial court granted Ag Land Trust's motion for private attorney general's fees pursuant to Code of Civil Procedure section 1021.5.[2] In its February 6, 2013 order, the trial court found that all of the statutory criteria for an award of attorney's fees under section 1021.5 had been met and awarded Ag Land Trust a total of $1,285,510.90 in attorney's fees.

Marina Coast now appeals the postjudgment award of attorney's fees on the primary ground that this court's reversal of the judgment requires reversal of the attorney's fees order. We agree that reversal of the judgment requires reversal of the attorney's fees order. However, for reasons that we will explain, we will remand the matter and direct the trial court to exercise its discretion under the standard stated by the California Supreme Court in *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 (*Graham*) for an award of section 1021.5 private attorney general's fees to a nonprevailing plaintiff under the catalyst theory.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Ag Land Trust's Petition for a Writ of Mandate*

Ag Land Trust is a self-described "California nonprofit public benefit corporation created with the intent to preserve Monterey County farmland . . . ."[3] In April 2010,

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] On our own motion, we take judicial notice of our prior opinion in *Ag Land Trust I*, *supra*, H038550. (Evid. Code, § 452, subd. (d)(1).) Some portions of the factual and procedural background have been taken from our prior opinion.

2

Ag Land Trust filed its first amended petition for a writ of mandate against respondent Marina Coast. In its petition, Ag Land Trust asserted that Marina Coast had formally approved the Regional Desalination Project on April 5, 2010, in reliance on the final environmental impact report (EIR) certified by the California Public Utilities Commission (PUC) in 2009 and a March 2010 addendum. Ag Land Trust sought declaratory relief, consisting of a declaration that Marina Coast had a duty to identify or obtain water rights for the Regional Desalination Project and a declaration that the Regional Desalination Project would violate the Monterey County Water Resources Agency Act. Additionally, Ag Land Trust sought a peremptory writ of mandate directing Marina Coast to set aside its approvals of the Regional Desalination Project and to prepare a legally adequate EIR in compliance with CEQA.

**B. *The Trial Court's Statement of Decision and Judgment***

A court trial on Ag Land Trust's petition for writ of mandate was held on October 27, 2011. The trial court's amended statement of decision granting the petition was filed on February 2, 2012. The court found that (1) the final EIR is deficient because Marina Coast, not the PUC, was the lead agency under CEQA for the Regional Desalination Project since Marina Coast was the first to approve the project; (2) the final EIR is inadequate because it did not include a discussion of the availability of groundwater for the Regional Desalination Project and assumes that groundwater rights will be perfected in the future; (3) the trial court had jurisdiction over the matter since the PUC did not have authority to regulate Marina Coast with respect to the Regional Desalination Project; and (4) the Water Resources Agency and California American Water Company (Cal-Am), a corporation regulated by the PUC that was a participant in the Regional Desalination Project, were not indispensible parties.

The judgment granting the first amended petition for writ of mandate and ordering issuance of a peremptory writ of mandate was filed on April 17, 2012. The judgment also included the trial court's findings, as follows: "The Court FINDS AND

3

DETERMINES that Marina Coast Water District prejudicially abused its discretion and failed to proceed in the manner required by law in making its approvals of the Regional Desalination Project on March 16, 2010 and April 5, 2010, by proceeding as a responsible agency rather than as a lead agency, by failing to properly analyze the environment impact report as a lead agency under CEQA, and by failing to properly and adequately identify, discuss, and address the environmental impacts of the project, including but not limited to water rights, contingency plan, assumption of constant pumping, exportation of groundwater from the Salinas Valley Groundwater Basin, brine impacts, impacts on overlying and adjacent properties, and water quality, as required here for a lead agency under CEQA." The court reserved jurisdiction over Ag Land Trust's claim for an award of private attorney general fees and costs under section 1021.5.

On April 17, 2012, the trial court issued a peremptory writ of mandate directing Marina Coast to "[v]acate and set aside its March 16, 2010 and April 5, 2010 approvals of the Regional Desalination Project, and each step approved by [Marina Coast] pursuant to . . . section 21168.9, subdivision (a). Further action to approve the project beyond setting aside and vacating these approvals by [Marina Coast] shall not be taken, except in accordance with the Judgment Granting First Amended Petition for Writ of Mandate ([CEQA]) and Ordering Issuance of Peremptory Writ of Mandate." The peremptory writ of mandate also directed Marina Coast to prepare a legally adequate EIR and to otherwise comply with CEQA in any subsequent action to approve the project.

### C. *Ag Land Trust I*

In June 2012, Marina Coast filed a timely notice of appeal from the judgment. On our own motion, we took judicial notice (Evid. Code, §§ 459, 452, subd. (c)) of the July 12, 2012 decision of the PUC (*Application of California-American Water Company* (2012) Cal. P.U.C. Dec. No. 12-07-008 [2012 Cal.PUC LEXIS 300], p. *28 (Decision No. 12-17-008)). In its decision, the PUC found that Cal-Am had withdrawn its support

4

of the project.  The PUC also found that the Regional Desalination Project "has no reasonable prospect of achieving its goals." (*Id.* at p. *28.)

Since it appeared that Cal-Am's withdrawal was potentially fatal to the Regional Desalination Project, we asked the parties to submit supplemental briefing addressing the issue of whether the appeal must be dismissed because the PUC's action had rendered the appeal moot.  In their supplement briefing, the parties agreed that the Regional Desalination Project would " 'not go forward.' " (*Ag Land Trust I*, *supra*, H038550 at p. 7.)

In *Ag Land Trust I,* our prior decision in this case (filed August 26, 2013), this court determined that the appeal was moot because the Regional Desalination Project would not be implemented.  (See, e.g., *Coalition for a Sustainable Future*, *supra*, 198 Cal.App.4th at p. 941.)  This court also declined the parties' invitation to issue an advisory opinion on the adequacy of the EIR and the other issues raised in the appeal with respect to the Regional Desalination Project.

Additionally, this court determined that a disposition under the rule of *Paul*, *supra*, 62 Cal.2d at pages 134-135, rather than a simple dismissal of the appeal, was appropriate. "Reversal with directions to the trial court to dismiss is the equivalent of dismissal of the appeal, but avoids the ambiguity of the latter procedure which does not dispose of a subsisting trial court judgment in a case wherein the issues are moot." (*Bell v. Board of Supervisors* (1976) 55 Cal.App.3d 629, 637.)  Accordingly, this court reversed the judgment and remanded the matter with directions to the trial court to dismiss the petition for writ of mandate as moot.

The *Ag Land Trust I* decision expressed no opinion regarding the pending appeal of the February 6, 2013 order awarding attorney's fees to Ag Land Trust.  That appeal is now before us.

**D.** *Ag Land Trust's Motion for Attorney's Fees*

In October 2012, before this court's decision in *Ag Land Trust I* was filed on August 26, 2013, Ag Land Trust filed a motion for an order awarding attorney's fees under section 1021.5.[4]  Ag Land Trust argued that it met the statutory criteria for an award of private attorney general's fees because (1) it was undisputed that it was the successful party in the CEQA action; (2) its CEQA action had enforced an important right affecting the public interest; (3) a significant benefit had been conferred upon the general public or a large class of persons; and (4) the necessity and financial burden of private enforcement made an award of attorney's fees appropriate.

In support of its argument, Ag Land Trust asserted that its CEQA action had enforced an important right affecting the public interest because the action ensured that the Regional Desalination Project would not go forward without evaluating the project's environment impacts, and also facilitated public discourse about a controversial project and the future of water supply on the Monterey Peninsula.  The CEQA action also conferred a significant benefit on the general public or a large class of persons, according to Ag Land Trust, by preserving the public review process for the next proposed water project.  Ag Land Trust further asserted that an award of attorney's fees was appropriate because no public agency had brought a CEQA challenge to the Regional Desalination Project and therefore private enforcement was necessary.  In seeking an award of attorney's fees, Ag Land Trust sought to be compensated for the financial burden placed upon it as a nonprofit corporation that had litigated the CEQA action for several years.

---

[4] Section 1021.5 provides in pertinent part:  "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

For these reasons, Ag Land Trust requested an award of reasonable attorney's fees in the lodestar[5] amount of $917,094 plus an enhancement multiplier of 1.25 to 1.50 and attorney's fees on the fee motion. The request for attorney's fees was supported with a summary of the lodestar hours for each of Ag Land Trust's attorneys, as well as their declarations, the declaration of the president of Ag Land Trust's board of directors, and the expert declarations of two attorneys who were experienced in CEQA litigation.

### E. *Marina Coast's Opposition*

In its opposition to Ag Land Trust's attorney's fees motion, Marina Coast disputed Ag Land Trust's assertions that it had satisfied the statutory criteria for an award of private attorney general's fees under section 1021.5. According to Marina Coast, Ag Land Trust's CEQA action did not confer a significant benefit on the community at large because, rather than ensuring compliance with CEQA, the action served to delay implementation of a solution to Cal-Am's illegal withdrawals of water from the Carmel River. Marina Coast also argued that the action did not facilitate either public discourse or the integrity of environmental planning, since the Regional Desalination Project had been the subject of "[h]undreds, if not thousands" of public comments on the draft EIR.

Marina Coast challenged the amount of the attorney's fees claimed by Ag Land Trust on the grounds that the lodestar hours and billing rates were unreasonable, participation in PUC proceedings was not compensable under section 1021.5, unnecessary and unsupported charges were included, and an enhancement multiplier was not justified.

### F. *Attorney's Fees Order*

The trial court granted Ag Land Trust's attorney's fees motion in its February 6, 2013 order after hearing and awarded attorney's fees in the total amount of

---

[5] The California Supreme Court has defined the "lodestar" as "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

$1,285,510.90.  The court found that Ag Land Trust met the statutory criteria for an award of attorney's fees under section 1021.5 because Ag Land Trust was the prevailing party; the prosecution of the CEQA action had conferred a significant benefit on the public and a large class of persons; and the necessity and financial burden of private enforcement made the award appropriate.

In calculating the amount of the attorney's fees award, the trial court adopted the lodestar method of determining attorney's fees, found the hourly rates and hours claimed by Ag Land Trust's attorneys to be reasonable, and also awarded attorney's fees on the fee motion.  The court exercised its discretion to award an enhancement multiplier of 1.35 due to the novelty and complexity of the issues involved and Ag Land Trust's "excellent job" in presenting the issues, and because some of Ag Land Trust's attorney's fees were contingent.

The trial court rejected Marina Coast's contention that attorney's fees for work in other forums regarding the Regional Desalination Project were not compensable.  The court also rejected Marina Coast's contention that the attorney's fees award should be eliminated or reduced because Marina Coast is a public agency, stating:  "This Court is entitled to conclude that the elected board of Marina Coast Water District must have approved the hard-fought litigation strategy, which included not just the CEQA petition, but the demurrer, the summary judgment, and the multiple writs.  The Court assumes that the Marina Coast board approved that kind of litigation strategy, and by approving that kind of litigation strategy, becomes responsible for not only paying its own attorney, but for the kind of response that was evoked."

### III.  DISCUSSION

Marina Coast filed a timely notice of appeal from the February 6, 2013 order awarding attorney's fees to Ag Land Trust.  An appeal from a postjudgment attorney's fees order is separately appealable as postjudgment order.  (See § 904.1, subd. (a)(2);

8

*Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 869-870.)[6]

### A. *The Parties' Contentions*

On appeal, Marina Coast's primary argument is that the reversal of the judgment in *Ag Land Trust I* means that no judgment exists that could support an award of attorney's fees. In the absence of a judgment, Marina Coast insists that Ag Land Trust is no longer a successful party entitled to an award of private attorney general fees under section 1021.5.

Alternatively, Marina Coast argues that in the event this court finds that reversal of the judgment does not necessitate reversal of the attorney's fees award, this court must address the merits of Marina Coast's prior challenge to the merits of the judgment. According to Marina Coast, the trial court lacked jurisdiction to entertain Ag Land Trust's writ petition because it constituted a collateral attack on a decision of the PUC; the trial court lacked jurisdiction on various other grounds; and attorney's fees cannot be awarded where, as here, the underlying action lacked merit.

In response, Ag Land Trust acknowledges that the judgment was reversed on mootness grounds. Relying on the California Supreme Court's decision in *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311 (*Press*) and *Maria P. v. Riles* (1987) 43 Cal.3d 1281 (*Maria P.*), Ag Land Trust argues that it is well established a plaintiff may be awarded attorney's fees under section 1021.5 even where the action has become moot.

Ag Land Trust further argues that substantial evidence supports the award of private attorney general's fees under section 1021.5. According to Ag Land Trust, it is the successful or prevailing party within the meaning of section 1021.5 because the record shows that its action was a substantial factor in the demise of the Regional

---

[6] Marina Coast's motion for expedited treatment of its appeal and calendar preference was deferred for consideration with the merits of this appeal. Since we have held oral argument, we deny the motion as moot.

Desalination Project, and also because the action had a significant public impact with regard to water rights, environmental impacts, and the EIR. Alternatively, under the catalyst theory stated in *Graham*, *supra*, 34 Cal.4th at pages 565-566, Ag Land Trust argues that its action achieved the results sought in the litigation: "to stop Marina Coast from building the [Regional Desalination Project] in reliance on a defective EIR."

Finally, Ag Land Trust contends that Marina Coast's arguments on appeal with regard to the trial court's jurisdiction should be rejected because the jurisdictional arguments lack substantive merit and this court determined in *Ag Land Trust I*, *supra*, H038550 that the appeal on the merits of the judgment was moot.

In reply, Marina Coast argues that Ag Land Trust has not met the three-part test for an award of attorney's fees under the catalyst theory stated in *Graham*, *supra*, 34 Cal.4th 553. Marina Coast explains that (1) Ag Land Trust is not the prevailing party because its action was not a catalyst in causing Marina Coast to change its position on the Regional Desalination Project; (2) Ag Land Trust's action lacked merit; and (3) Ag Land Trust did not make a reasonable pre-litigation effort to settle the case.

After briefing was completed, Ag Land Trust moved for leave to file a supplemental letter brief disputing Marina Coast's contention, made for the first time in its reply brief, that Ag Land Trust had failed to make a reasonable pre-litigation effort to settle the case. We granted the motion and have filed Ag Land Trust's supplemental letter brief.

Before addressing the parties' contentions on appeal, we provide an overview of the standard for an award of section 1021.5 private attorney general's fees to a nonprevailing plaintiff under the catalyst theory.

## B. *The Catalyst Theory*

In several decisions, the California Supreme Court has clarified the award of attorney's fees under section 1021.5, the private attorney general statute. "Section 1021.5 authorizes a court to 'award attorneys' fees to a successful party . . . in any action which

10

has resulted in the enforcement of an important right affecting the public interest . . . .' The Legislature enacted the provision to codify the private attorney general doctrine previously developed by the courts. [Citations.] The doctrine rests on the recognition that privately initiated lawsuits, while often essential to effectuate important public policies, will as a practical matter frequently be infeasible without some mechanism authorizing courts to award fees. [Citations.] Accordingly, ' "the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." ' [Citations.]" (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 250 (*Vasquez*).)

"A court may award attorney fees under section 1021.5 only if the statute's requirements are satisfied. Thus, a court may award fees only to 'a successful party' and only if the action has 'resulted in the enforcement of an important right affecting the public interest . . . .' [Citation.] Three additional conditions must also exist: '(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.' [Citation.]" (*Vasquez, supra*, 45 Cal.4th at pp. 250-251.)

In *Graham*, our Supreme Court considered the question of "whether section 1021.5 permitted an award of attorney fees, . . . 'even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation.' [Citation.]" (*Vasquez, supra*, 45 Cal.4th at p. 253, quoting *Graham, supra*, 34 Cal.4th at p. 560.) The *Graham* court answered the question in the affirmative: "Under the catalyst theory, attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation. . . . In

11

order to be eligible for attorney fees under section 1021.5, a plaintiff must not only be a catalyst to defendant's changed behavior, but the lawsuit must have some merit, . . . and the plaintiff must have engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation." (*Graham*, *supra*, at pp. 560-561.)

In the companion case of *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604 (*Tipton-Whittingham*) the Supreme Court further stated: "California law continues to recognize the catalyst theory . . . . In order to obtain attorney fees without such a judicially recognized change in the legal relationship between the parties, a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense, as elaborated in *Graham;* and (3) that the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (*Id*. at p. 608.)

Thus, an attorney's fee award under section 1021.5 "may be justified even when plaintiff's legal action does not result in a favorable final judgment. [Citations.]" (*Maria P.*, *supra*, 43 Cal.3d at pp. 1290-1291; see also *Press*, *supra*, 34 Cal.3d at pp. 320-321 [plaintiffs awarded fees under § 1021.5 although action became moot because they achieved the relief sought through preliminary injunction].)

**C. *Analysis***

At the outset, we agree with Marina Coast that the disposition in the August 26, 2013 decision in *Ag Land Trust I*, which reversed the judgment and directed the trial court to dismiss Ag Land Trust's writ petition as moot, compels reversal of the February 6, 2013 postjudgment order awarding Ag Land Trust attorney's fees in the total amount of $1,285,510.90. (See *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 221 [order awarding section 1021.5 attorney's fees " 'falls with a reversal of the judgment on which it is based.' [Citation.]".)

12

However, reversal of the February 6, 2013 attorney's fees order does not end our analysis. In *Midpeninsula Citizens for Fair Housing v. Westwood Investors* (1990) 221 Cal.App.3d 1377, this court determined that where, as here, the judgment is reversed and the matter remanded with directions to dismiss the action as moot, the plaintiff may seek attorney's fees under section 1021.5 by showing "on remand that the action, notwithstanding its dismissal for mootness, has 'resulted in the enforcement of an important right affecting the public interest.' [Citation.]" (*Id.* at p. 1392, fn. 3.)

We acknowledge the parties' arguments on appeal regarding Ag Land Trust's entitlement to section 1021.5 attorney's fees under the catalyst theory. We decline the invitation to decide the issue in this appeal, since the trial court usually decides whether a party is entitled to an award of attorney's fees under section 1021.5 in the first instance. (See *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 494.) "In general, whether plaintiffs have met the statutory requirements for an award of fees pursuant to section 1021.5 is a matter for the discretion of the trial court. [Citation.]" (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 845.)

In exercising its discretion, the trial court may make factual findings. "When a lawsuit has been mooted by a defendant's change in conduct, some development of the factual record is required in order to prevail on a catalyst theory. At the very least, a plaintiff must establish ' "the precise factual/legal condition that [it] sought to change or affect" ' as a prerequisite for establishing the catalytic effect of its lawsuit. [Citation]." (*Graham*, *supra*, 34 Cal.4th at p. 576.) Additionally, "[t]he trial court may review this factual background not only to determine the lawsuit's catalytic effect but also its merits." (*Ibid.*)

Accordingly, under the first prong of the three-part test announced in *Graham* and restated in *Tipton-Whittingham* for application of the catalyst theory, the trial court determines whether "the lawsuit was a catalyst motivating the defendants to provide the primary relief sought." (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608; see also

13

*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353 [award of attorney's fees under section 1021.5 not proper where no causal connection between plaintiff's action and relief obtained].) " 'The critical fact is the impact of the action, not the manner of its resolution.' [Citation.] . . . [¶] If plaintiff's lawsuit 'induced' defendant's response or was a 'material factor' or 'contributed in a significant way' to the result achieved then plaintiff has shown the necessary causal connection. [Citations.] The question of whether plaintiff's action is causally linked to achieving the relief obtained is a *question of fact*. [Citation.]" (*Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 967 (italics added); see also *Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 315 [whether plaintiffs' efforts resulted in the enforcement of an important right affecting the public interest is a factual issue].)

The second prong of the catalyst theory's three-part test requires the trial court to determine whether "the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense, as elaborated in *Graham*." (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608.) In *Graham*, the Supreme Court instructed that "[t]he trial court must determine that the lawsuit is not 'frivolous, unreasonable or groundless' [citation], in other words that its result was achieved 'by threat of victory, not by dint of nuisance and threat of expense.' [Citation.] The determination the trial court must make is not unlike the determination it makes when asked to issue a preliminary injunction, i.e., not a final decision on the merits but a determination at a minimum that ' "the questions of law or fact are grave and difficult." ' [Citations.]" (*Graham*, *supra*, 34 Cal.4th at pp. 575-576.)

The third prong of the catalyst theory's three-part test—whether "the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit"—may also present a factual question. (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608.) "[S]ettlement efforts (or their absence) are relevant *in every case* to show that 'the *necessity* and financial burden *of private enforcement* . . . are such as to make the award

14

appropriate . . . .' [Citation.] In assessing such information in a particular case to determine whether private enforcement was sufficiently necessary to justify an award of fees, the trial court exercises its equitable discretion in light of all the relevant circumstances." (*Vasquez*, *supra*, 45 Cal.4th at pp. 258-259, fn. omitted.) "Lengthy prelitigation negotiations are not required, nor is it necessary that the settlement demand be made by counsel, but a plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time. [Citations.] What constitutes a 'reasonable' time will depend on the context." (*Graham*, *supra*, 34 Cal.4th at p. 577.)

In the present case, the trial court ruled on Ag Land Trust's motion for an award of private attorney general fees under section 1021.5 prior to this court's reversal of the judgment and remand for dismissal of the action. The trial court therefore did not consider whether Ag Land Trust, as the nonprevailing party, was entitled to an award of section 1021.5 attorney's fees under the catalyst theory.

As we have discussed, the trial court usually determines entitlement to an award of section 1021.5 attorney's fees under the catalyst theory in the first instance. Additionally, since application of the three-part test stated in *Graham* and *Tipton-Whittingham* may involve factual determinations, we conclude that a remand to the trial court is appropriate. " '[I]t has long been the general rule . . . that ". . . the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . ." [Citation.] The rule promotes the orderly settling of factual questions and . . . provides a meaning record for review . . . .' " (*California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 442.)

We will therefore reverse the February 6, 2013 attorney's fees order and remand the matter for the trial court, upon motion by Ag Land Trust, to exercise its discretion under the standard stated by the California Supreme Court in *Graham*, *supra*, 34 Cal.4th 553 for an award of section 1021.5 private attorney general's fees under the catalyst

15

theory.  Having reached this conclusion, we need not address Marina Coast's challenge to the substantive merits of Ag Land Trust's action on jurisdictional and other grounds, since the merits of the action is a factor in the three-part test for application of the catalyst theory.  (See *Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 608.)

## IV.  DISPOSITION

The February 6, 2013 order after hearing awarding attorney's fees under Code of Civil Procedure section 1021.5 is reversed, and the matter is remanded to the trial court, upon motion by Ag Land Trust, to exercise its discretion under the standard stated by the California Supreme Court in *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 for an award of Code of Civil Procedure section 1021.5 attorney's fees under the catalyst theory.  The parties shall bear their own costs on appeal.

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

ELIA, ACTING P.J.

_____

MIHARA, J.