Filed 10/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| VIEN T. BUI,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TRANG KIM NGUYEN et al.,<br><br>    Defendants and Appellants. | H039310<br>(Santa Clara County<br>Super. Ct. No. 110CV161914) |

When a lawsuit enforces "an important right affecting the public interest" and the statutory criteria under section 1021.5 of the Code of Civil Procedure are satisfied, a private litigant may recover his or her attorney fees.[1]  One criterion under section 1021.5 is that private enforcement of the public right vindicated in the lawsuit was necessary. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.)  In this appeal, we conclude that the plaintiff, who was awarded damages  for injuries arising from negligently performed dental work and who obtained an injunction prohibiting defendant (a dental technician) from identifying herself as a dentist, was not entitled to attorney fees under section 1021.5 because he did not show that private enforcement of a public right was necessary.

A jury found in plaintiff Vien T. Bui's favor on an intentional misrepresentation claim and awarded him $150,000 against defendant, Hi-Tech Dental, Inc. (Hi-Tech).  It

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

also awarded $50,000 against Hi-Tech's owner and dental assistant, Trang Kim Nguyen.[2] (Nguyen; hereafter, appellants Hi-Tech and Nguyen are sometimes collectively referred to as Dental Clinic.)  About three weeks later and before judgment was entered, Bui obtained a permanent injunction requiring Nguyen (1) to identify herself as a dental assistant, not a dentist, in all Hi-Tech advertising, and (2) to refrain from wearing a white dental lab coat.  Bui made a postjudgment motion for more than $500,000 in attorney fees pursuant to section 1021.5.  He claimed  he had acted in the role of a private attorney general in obtaining injunctive relief that was beneficial to a large group of dental patients potentially seeking the services of Dental Clinic.  The court granted Bui's motion, awarding $126,974.13.

On appeal, Dental Clinic contends the trial court erred in awarding attorney fees to Bui under section 1021.5.  It asserts (1) there was no substantial evidence the injunctive relief Bui obtained conferred a significant benefit upon the general public or a large group of persons; (2) the record does not support the finding there was a necessity of private enforcement under subdivision (b) of section 1021.5; and (3) there was no statutory finding that the burden of private enforcement outweighed Bui's personal stake in the case.

We conclude the court abused its discretion in granting attorney fees under section 1021.5.  Bui failed to establish that private enforcement was necessary to protect the public from false advertising by Nguyen.  Because the necessity of private enforcement is one of the required elements under section 1021.5, the court erred in awarding attorney fees under that statute.  We will therefore reverse the order.

---

[2] We understand that Vietnamese names generally consist of family name, middle name, and given name, in that order.  Under this convention, defendant's surname is Trang.  But because the defendant is often referred to in the record as "Nguyen" (see, e.g., Bui's complaint), and is so referenced by her own counsel both below and on appeal, we will also refer to defendant as Nguyen.

2

PROCEDURAL BACKGROUND

On January 22, 2010, Bui filed suit against Hi-Tech and Nguyen (case number 110-CV161914). He alleged seven causes of action, captioned as intentional misrepresentation, battery, false imprisonment, fraud (concealment), unfair business practices, intentional infliction of emotional distress, and negligence. The complaint did not allege that Hi-Tech and Nguyen engaged in false advertising. Nor did it contain a prayer for any form of injunctive relief.

On February 11, 2010, Bui filed a separate suit (case number 110-CV163603) against three licensed dentists: Frank Tran (Tran), Doina Balaban (Balaban), and Lien Hoang (Hoang).[3] The first amended complaint was captioned as one for "dental negligence and fraud." (Capitalization and emphasis omitted.) Bui alleged that Tran, Balaban, and Hoang were at all relevant times employed by or had contracts with Hi-Tech. He alleged that between February 2008 and November 2008, he suffered injuries as a result of negligent dental treatment performed by Tran. He also alleged a separate negligence claim against Balaban, as well as dental negligence and fraud claims against Hoang. Based upon the stipulation of the parties, the court ordered the two cases consolidated.

Bui's case against Dental Clinic apparently[4] proceeded to trial in early 2012. On February 28, 2012, the jury returned a verdict awarding Bui (1) $150,000 against High-

---

[3] Hoang was sued by Bui as "Hoang Bich-Lien Thi, D.D.S." We are aware of certain matters pertaining to this second suit because of a separate appeal filed by Bui after summary judgment was granted in favor of Hoang; we affirmed the judgment entered on summary judgment in that appeal. (See *Bui v. Hoang*, Oct. 3, 2013, H038182 [nonpub. opn.].) Pursuant to Evidence Code sections 452, subdivision (d) and 459, subdivision (a), we take judicial notice of this prior unpublished opinion. Judicial notice of our prior opinion is appropriate because it "help[s] complete the context of this case." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 2.)

[4] Neither the jury verdict nor any post-trial orders associated with the trial are included in the record provided by Dental Clinic. It would have been helpful to this court to have had these documents as part of the record. It does not appear, however, that the

Tech for intentional misrepresentation, and (2) $50,000 against Nguyen on the same cause of action. According to a recital in the court's permanent injunction, the $50,000 awarded to Bui against Nguyen was "for past non-economic loss, including physical pain and mental suffering." The trial court then reduced the verdict to a joint and several award of $50,000 against Hi-Tech and Nguyen, based upon its conclusion that Hi-Tech's liability was founded upon respondeat superior liability.

About three weeks after the jury verdict, on March 23, 2012, Bui filed a motion for injunctive relief, citing Business and Professions Code section 17535 (injunctive relief for false advertising) and Business and Professions Code section 17203 (injunctive relief to address unfair business practices). Based upon the record before us, this motion was the first indication by Bui that he intended to seek equitable relief concerning alleged unlawful business practices or false advertising. He requested a permanent injunction ordering Dental Clinic to (1) modify its radio and television advertisements that featured Nguyen to include a specific disclaimer that she was not a dentist and that only licensed dentists could diagnose the consumer's dental problems; (2) monitor Hi-Tech's Web site and affirm the accuracy of its contents; (3) modify Hi-Tech's Web site to place the names of Hi-Tech's dentists on page one and keep the roster up to date; (4) modify the Web site to include a disclaimer on page one that patients could be treated only by licensed dentists and that Nguyen was not a licensed dentist; and (5) display at the Hi-Tech facility photographs of licensed dentists currently practicing at the clinic with an indication that they were licensed dentists, and to display on the same wall the photographs and licenses of the dental staff who were not licensed dentists as well as a sign indicating that status. Bui's motion also sought an order that Nguyen at all times comply with the limitations of her license, including that she at all times be under the

basic facts concerning the jury trial as recited in Dental Clinic's opening brief (i.e., when it transpired, the nature of the verdict, and the substance of the court's later order reducing the verdict) are in dispute.

4

supervision of a licensed dentist, and that she never give a diagnosis or plan of treatment for any patient's dental condition. There is nothing in the record indicating that Dental Clinic opposed Bui's motion for injunctive relief.

The court granted the motion in part as against Nguyen only on June 12, 2012. It found that a permanent injunction should issue requiring Nguyen to (1) identify herself as a dental assistant rather than a dentist in any advertising, and (2) refrain from wearing a white dentist's coat at the Hi-Tech facility. The court based its decision on the fact that the jury had found in favor of Bui, 12-0, on his claim of intentional misrepresentation. That claim was based in part on allegations that Nguyen had worn a " 'doctor's coat' " and had appeared to Bui to be a dentist. It was also based on Bui's testimony that he had believed Nguyen to be a dentist. The court observed that Bui had presented six witnesses (other patients) "[t]o buttress his claims" and their testimony was "of uneven value." The court concluded, however, that one of those witnesses had believed Nguyen to be a dentist and it could be inferred from the testimony of two other witnesses that they had also believed Nguyen to be a dentist. The court therefore issued a permanent injunction against Nguyen pursuant to its ruling on the intentional misrepresentation cause of action of the complaint.

Bui then filed a motion for attorney fees under section 1021.5, which Dental Clinic opposed. Both Bui's motion and Dental Clinic's opposition to the motion were supported by numerous declarations. On December 28, 2012, the court granted Bui's motion, awarding him a total of $126,974.13 in attorney fees.

DISCUSSION

I.      *Attorney Fee Awards Under Section 1021.5*

In 1977, the California Legislature enacted section 1021.5 to provide courts with the statutory authority to award attorney fees under a private attorney general theory. (*Woodland Hills Residents Assn., Inc. v. City Council of Los Angeles* (1979) 23 Cal.3d 917, 925 (*Woodland Hills*).) The enactment occurred at nearly the same time

5

the California Supreme Court held that courts may exercise their equitable authority to award attorney fees "under a 'private attorney general' rationale to litigants who successfully pursue 'public interest' litigation vindicating important constitutional rights . . . [but] left open the related question 'whether courts may award attorney[] fees under [that] theory, where the litigation . . . has vindicated a public policy having a statutory . . . basis.' [Citation.]" (*Ibid.*, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 47, italics omitted.)

Under section 1021.5,[5] fees may be awarded when the action " 'has resulted in the enforcement of *an important right affecting the public interest*' regardless of its source— constitutional, statutory or other." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 925, quoting § 1021.5, original italics.) "[T]he fundamental objective of the private attorney general doctrine of attorney fees is ' "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." ' [Citations.]" (*Id.* at p. 933.) The private attorney general doctrine is an exception to the general rule, commonly referred to as the "American rule," that each party to a lawsuit must ordinarily pay his or her own attorney fees. (*In re Adoption of Joshua S.* (2008) 42 Cal.4th 945, 954.)

A litigant is eligible for attorney fees under section 1021.5 "when 'plaintiffs' action " (1) has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) "the necessity and

_____

[5] Section 1021.5 provides in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

6

financial burden of private enforcement are such as to make the award appropriate." ' [Citation.]" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1214, quoting *Woodland Hills*, *supra*, 23 Cal.3d at p. 935.) There are in reality four criteria for eligibility, because the third element involves " ' "two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citations.]" (*Conservatorship of Whitley*, at p. 1214.) The moving party bears "[t]he burden [of] establish[ing] each prerequisite to an award of attorney fees under section 1021.5. [Citation.]" (*Ebbetts Pass Forest Watch v. California Dept. of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376, 381 (*Ebbetts*); accord, *Samantha C. v. State Dept. of Developmental Services* (2012) 207 Cal.App.4th 71, 78 (*Samantha C.*).)

With respect to the first criterion, although the right that is "important" need not be constitutional in nature, section 1021.5 does not afford relief for "the enforcement of 'any' or 'all' statutory rights. [Rather] . . . the statute directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 935; see also *id.* at p. 939 ["the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation"].) It is the duty of the trial court, exercising "its traditional equitable discretion . . . [to] realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." (*Id.* at p. 938.) The type of "important rights" that may be the subject of litigation in which private attorney general fees may be awarded include "racial discrimination, the rights of mental patients, legislative reapportionment and . . . environmental protection." (*Id.* at p. 936, fns. omitted.) A plaintiff may seek attorney fees under section 1021.5 in successfully prosecuting a claim under the Unfair Competition Law, Business and Professions Code

7

section 17200 et seq.  (*Yanting Zhang v. Superior Court* (2013) 57 Cal.4th 364, 371, fn. 4.)

The "benefit" required under the second criterion for an attorney fee recovery is not specifically defined under section 1021.5.  But "the explicit terms of the statute provide that the 'significant benefit' conferred by the litigation may be either 'pecuniary or nonpecuniary' in nature; thus, the fact that the chief benefits afforded by an action have no readily ascertainable economic or monetary value in no way forecloses an attorney fee award under the statute." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 939.)  The trial court is required to determine the significance of the benefit as well as the size of the group favorably impacted by making "a realistic assessment, in light of all the circumstances, of the gains which have resulted in a particular case.  [Citation.]" (*Id.* at pp. 939-940.)

As to the "necessity" element in the third criterion, "[t]he 'necessity' of private enforcement ' " ' "looks to the adequacy of public enforcement and seeks economic equalization in cases where private enforcement is necessary." ' [Citations.]" ' [Citation.]" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215, quoting *Lyons v. Chinese Hosp. Assn.* (2006) 136 Cal.App.4th 1331, 1348 (*Lyons*).)  Where the litigation proceeds against the only agency that would bear the responsibility of complying with the constitutional or statutory right being asserted, necessity of private enforcement is manifest.  (*Woodland Hills*, *supra*, 23 Cal.3d at p. 941; see also *Samantha C.*, *supra*, 207 Cal.App.4th at p. 81 [necessity of private enforcement clear where action was directed against two agencies responsible for enforcement of statute].)  But an award of attorney fees under section 1021.5 is not proper "when the public rights in question were adequately vindicated by governmental action.  [Citation.]" (*Conservatorship of Whitley*, at p. 1215.)  As further explained by the California Supreme Court, "the 'necessity . . . of private enforcement' has long been understood to mean simply that public enforcement is not available, or not sufficiently available.  [Citation.]" (*Id.* at p. 1217.)  Thus, necessity

8

is shown where public enforcement of the right affecting the public interest in the case "is inadequate. [Citation.]" (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 154 (*Collins*).) A court exercising its "equitable discretion concerning attorney fees, . . . properly considers all circumstances bearing on the question of whether private enforcement was necessary, including whether the party seeking attorney fees attempted to resolve the matter before resorting to litigation." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 247-248 (*Vasquez*).)

The fourth criterion of a section 1021.5 award—that "the . . . financial burden of private enforcement, . . . make[s] the award appropriate" (§ 1021.5, subd. (b))—requires that " 'the cost of the claimant's legal victory transcends his personal interest, that is, . . . the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills*, *supra*, 23 Cal.3d at p. 941.) In other words, "[s]ection 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." (*Beach Colony II v. Cal. Coastal Commission* (1985) 166 Cal.App.3d 106, 114 (*Beach Colony II*); see also *Roybal v. Governing Bd. of Salinas City Elementary School Dist.* (2008) 159 Cal.App.4th 1143, 1151 [fees under section 1021.5 not appropriate " 'if the enforcement of the public interest is merely "coincidental to the attainment of . . . personal goals" or is "self serving" ' "].)

Generally, an order granting or denying attorney fees under section 1021.5 is reviewed for abuse of discretion. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142-143.) Although this standard is deferential, a court abuses its discretion "where no reasonable basis for the action is shown. [Citation.]" (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) Determination of the proper amount of the award under section 1021.5 is within the trial court's discretion, but the ultimate award "must still bear some reasonable relationship to the lodestar figure and to the purpose of the private attorney general doctrine." (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311,

9

324.) Since attorney fee awards are generally reviewed for abuse of discretion, the award will be upheld unless " 'there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.' " (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512 (*Frei*), quoting *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545.)

The California Supreme Court has clarified that in some instances review of a fee award under section 1021.5 is de novo: " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; accord, *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025-1026.)

II.     *The Court Erred in Granting Bui's Motion for Attorney Fees*

   A.     The Motion for Attorney Fees

      1.     *Bui's Motion*

Bui's motion for attorney fees included seven supporting declarations: the declarations of Bui, four of Bui's attorneys, and two attorney experts. Bui sought "to have his counsel compensated for all work related to obtaining the injunction." He claimed a total of $257,807 of attorney fees actually incurred. In addition to this lodestar amount, he requested that the court apply a multiplier of two in determining the fee award.

Bui argued in his motion that the posttrial injunction conferred a significant benefit upon the public. He asserted that the "action exonerated the substantial policy" of Business and Professions Code section 17500 to prohibit false and misleading

10

advertising. He also contended that "Defendants' misleading advertisements directly threatened the public by enabling the unlicensed practice of dentistry." And he argued: "The unlicensed practice of dentistry not only threatens the substantial community targeted by the advertisements (the Vietnamese population of the Bay Area is over 150,000 people), but also, the many people who are indirectly harmed when both the economics and reasonably expected outcomes of responsible practices are undercut by irresponsible promises."

As to the necessity of private enforcement, Bui argued that "[i]t is extremely difficult to interest a public enforcement agency in claims such as Mr. Bui's." He contended that the financial burden of the case greatly exceeded its estimated value. Because Bui had no economic losses and the existing medical records contradicted his testimony, Bui argued that any anticipated financial recovery "seemed extremely limited." He asserted that "[a]gainst the slim prospect of financial recovery, Mr. Bui's counsel could expect to devote hundreds of hours to the case and substantial costs." Bui argued that, in fact, he was required to bring two separate cases against the various parties he claimed were responsible for his losses, and those two cases were consolidated. In addition to the attorney fees incurred, he had to engage both a handwriting expert to prove the dental records "had been adulterated" and a dentistry expert to opine that the treatment plan proposed by Nguyen was inappropriate.

Bui acknowledged that he did not prevail on all of his claims. But he argued there should be no proration of fees because he prevailed on the intentional misrepresentation claim, and because the related claims were "inextricably linked" to the claim upon which he prevailed. In his view, this justified an award of the full amount of fees incurred. He also asserted that a multiplier of 2.0 times the lodestar was appropriate in view of the complexity of the case, the fact that the dental records contradicted his testimony, the insubstantial nature of his economic damages, and the unlikelihood of settlement of the case.

11

## 2. *Dental Clinic's Opposition*

Dental Clinic opposed the motion for section 1021.5 attorney fees. The opposition consisted of a memorandum of points and authorities and declarations from Nguyen, as well as Dental Clinic's former counsel and eight people who were acquainted with Nguyen (seven of whom had been dental patients at Hi-Tech).

Dental Clinic argued the "case was nothing more than a private and isolated personal injury claim to potentially recover a 3 million dollar award." It asserted that Bui's motion should be denied because (1) Bui's sole motivation for the suit was to advance his private personal injury claim and there was nothing in the complaint indicating that he was bringing the action to promote the public interest; (2) there was no significant benefit conferred upon the public, because "[t]he benefits of the injunction [were] narrow in nature and corrective in application . . . [and the injunction was] a precautionary measure to the extent that there [was] any confusion as to [Nguyen's] role in the dental office"; (3) Bui did not show that "public enforcement was . . . unavailable or that public agencies have vigorously denied enforcement throughout the almost 20 years [Dental Clinic had been in] business"; (4) Bui was "only motivated by substantial financial incentive"; and (5) "the resources expended and fees incurred in prosecuting [the] case were reasonable and proportional in relation to the potential and expected 3 million dollar recovery [that Bui's counsel had requested during the jury trial]." Dental Clinic argued further that Bui's lawsuit was motivated by a "personal vendetta" of one of his attorneys, whose husband had previously and unsuccessfully sued Nguyen and Hi-Tech. In the event any fees were awarded, Dental Clinic contended the amount should be significantly discounted "to allow for only those fees expended on the facts supporting the claim of intentional misrepresentation."

## 3. *Bui's Reply*

Bui submitted a reply to the opposition that consisted of a memorandum of points and authorities and four declarations. He reiterated his position that the permanent

12

injunction resulted in a significant benefit by providing "protection of dental patients' physical health from the unlawful practice of dentistry in the Vietnamese community." Bui also reasserted that the financial burden of private enforcement made an attorney fee award appropriate because his "case was not financially viable," submitting a new declaration from an attorney specializing in dental malpractice who formed that opinion after reviewing the case.

### 4. *The Court's Order*

After hearing argument and submitting the case, the court granted Bui's motion. The court found that a significant public benefit resulted from enjoining further violations of Business and Professions Code sections 17200 and 17500: "Those code provisions are designed to prevent misleading and untrue advertising aimed at the general public. This seems particularly true given that the advertising in this case was pointedly aimed at the first-generation Vietnamese immigrant community." The court also found that private enforcement was necessary, and that "in the interest of justice[,] the attorneys' fees [incurred by Bui] should not be paid out of the recovery" from his successful trial and jury verdict. And while the court acknowledged that information between the two consolidated lawsuits overlapped, it concluded the lawsuits had different goals such that the attorney fees claimed in the motion should be apportioned between the two suits. Accordingly, it concluded that attorney fees of $126,974.13 would be awarded in the case against Dental Clinic. In so doing, it rejected Bui's request to apply a multiplier in making the award.

### B. Necessity of Private Enforcement Finding Is Unsupported

As noted, one of the elements required in seeking an award of attorney fees under section 1021.5 is the "necessity . . . of private enforcement." (§ 1021.5, subd. (b); *Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215.) Dental Clinic argues the attorney fee award cannot stand because there was no evidence to support the court's finding that this element had been satisfied. It contends this finding was based on the

13

erroneous "conclusion that there were actual complaints filed [with] public agencies against [Dental Clinic] that were ignored," when there was no evidence presented of any such complaints.

In its order awarding attorney fees, the court specifically found: "There was evidence presented of various unsuccessful efforts to involve the dental regulatory authorities. There had apparently been prior complaints filed, all of which had resulted in no action being taken or insufficient evidence being adduced to allow action to be taken." We find, however, that the record does not support this conclusion, even if we credit all inferences that may be reasonably drawn from the evidence favoring the trial court's decision. (See *In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 691.)

The evidence relied on by Bui in his motion and reply papers in support of the necessity of private enforcement element were the declarations of Scott Maurer and William Kennedy. Maurer, an associate clinical law professor at Santa Clara University School of Law, opined that based upon his 16-year legal career, "low-income, non-English speaking consumers are extremely hesitant to file complaints with police or public agencies." He opined that, based upon his familiarity with the allegations in the case, "it is *extremely* unlikely that any public entity would have sought or obtained the injunction [that] was obtained in this case." (Original italics.) Kennedy, a consumer protection attorney, opined: "In my experience, instances of fraudulent conduct such as was exhibited by Hi-Tech Dental are rarely challenged in court, particularly when the offending conduct is directed towards immigrant communities."

Neither declaration offers any support for the court's factual finding that there had been " . . . various unsuccessful efforts to involve the dental regulatory authorities" or that "[t]here had apparently been prior complaints filed, all of which had resulted in no action being taken or insufficient evidence being adduced to allow action to be taken." Instead, the declarations contain only conclusory assertions that the fraudulent conduct allegedly perpetrated upon Bui is the type of conduct rarely challenged in court,

14

particularly by low-income, non-English speaking members of the immigrant community. And while Maurer's declaration contains the opinion that it was very unlikely that any public entity would have sought or obtained an injunction in the kind of case presented by Bui, neither declarant provided specific information about attempts of any kind to involve governmental entities in seeking injunctive relief against Dental Clinic for the type of conduct allegedly perpetrated upon Bui or upon any other member of the public.

Two of the declarations submitted to the trial court along with Bui's reply papers also touched upon the issue of enforcement. Paul Nathan, an attorney who has handled a number of dental malpractice cases, stated that "the risk to patients of misleading advertising is grave and is rarely the subject of enforcement actions." Richard Kinsel, Bui's dental expert at trial, opined that Bui's case was "an example of the inadequate enforcement efforts of the California Dental Board towards advertising by non-dentists."[6] Neither declaration provided any factual support for the court's conclusion that there had been efforts to involve governmental entities to enforce false advertising and unfair business practice claims asserted by Bui (or others) against Dental Clinic. We conclude there is no support in the record for the court's specific factual finding that there had been prior unsuccessful efforts to obtain public enforcement by dental regulatory authorities.

This conclusion notwithstanding, we must still determine whether the court properly made an *implied* finding that Bui established the necessity of private enforcement. (See *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 157 (*Mejia*) [implied findings that plaintiff was "successful party and that this proceeding has

---

[6] In his reply memorandum, Bui did not reference either Nathan's or Kinsel's declarations to support his position that private enforcement was necessary. On appeal, Bui refers to Kinsel's declaration (as well as Maurer's declaration)—but not to the Kennedy or Nathan declarations—to argue that this element of a claim under section 1021.5 was satisfied.

15

vindicated an important public right and conferred a significant benefit on the general public or a large class of persons"].) We conduct this analysis even though Dental Clinic asserts that, to the extent the court failed to make express findings concerning any of the requisite elements for an attorney fee claim under section 1021.5, the trial court's order must be reversed. Case authority does not support Dental Clinic's position. (See, e.g., *Mejia*, *supra*, 156 Cal.App.4th at p. 157; *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, 577 & fn. 13 [finding substantial evidence supporting implied finding of lack of causation]; *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 234 [court impliedly found against defendant's position that fees should be adjusted downward due to lack of novelty or complexity of issues]; *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 867 [no express finding requested or required on issue of whether litigation benefited large class of persons or the general public].)

In assessing whether the necessity of private enforcement criterion is satisfied, the court " ' " ' "looks to the adequacy of public enforcement and seeks economic equalization in cases where private enforcement is necessary." ' [Citations.]" ' [Citation.]" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215.) The criterion is met if "public enforcement is not available, or not sufficiently available. [Citation.]" (*Id.* at p. 1217.) Thus, for example, the necessity of private enforcement was established in environmental litigation in which it was established that "no public agency was willing or able to contest the [California Coastal] Commission's decision." (*Beach Colony II*, *supra*, 166 Cal.App.3d at p. 112.) Similarly, in a validation proceeding by a municipality to declare the validity of a special tax assessment, the court held that the necessity of private enforcement had been shown by the defendant challenging the legality of the assessment because there was "no public attorney general available to litigate the issue." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1299.)

16

This court affirmed an award of attorney fees under section 1021.5 in an action in which the plaintiffs sought declaratory and injunctive relief concerning a controversy over whether a developer was required to pay prevailing wage rates to workers on a construction project. (*Monterey/Santa Cruz etc. v. Cypress Marina Heights LP* (2011) 191 Cal.App.4th 1500.) In that case, this court concluded, among other things, that the evidence supported the trial court's finding that "[the] plaintiffs enforcement action was necessary because no public agency was willing to pursue this litigation." (*Id.* at p. 1523; see also *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 401 [because no government action was being taken to vindicate plaintiff's rights, and the agency subject to the statute under which plaintiff was asserting rights had denied responsibility, private enforcement was plaintiff's "only realistic way to enforce his [statutory] rights"].)

When a court "looks to the adequacy of public enforcement" (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1215, internal quotations omitted), it must consider whether the evidence shows that public enforcement is inadequate. The declarations submitted on behalf of Bui in support of his assertion of the necessity of private enforcement are nonspecific and conclusory. (Cf. *Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 328-329 [summary judgment proper where evidence to support futility exception to general requirement that agency's development decision cannot be challenged until final consisted of "unsupported conclusions and opinions"]; *Bollengier v. Doctors Medical Center* (1990) 222 Cal.App.3d 1115, 1130 [physician's mandamus petition challenging disciplinary action of medical center properly denied; petitioner produced no "solid objective evidence" that exhaustion of administrative remedies would have been futile].) There is, for instance, no evidence (1) Bui made any inquiry to any governmental agency in an effort to address Dental Clinic's alleged false advertising or unfair business practices; (2) Bui or anybody else made any attempts to involve governmental agencies in remedying Dental Clinic's business practices; (3) the California Dental Board routinely turns a blind eye to complaints about the unlicensed practice of

17

dentistry; or (4) the California Attorney General routinely ignores citizens' complaints concerning false advertising and unfair business practices. The declarations submitted, therefore, amount to implied general statements, without evidentiary support, that public enforcement of laws against false advertising and unfair business practices was unavailable because it would have been futile to ask any governmental agency to pursue the matter against Dental Clinic. This is not evidence that "public enforcement of the 'important right affecting the public interest' (§ 1021.5) at issue is inadequate. [Citation.]" (*Collins*, *supra*, 205 Cal.App.4th at p. 154.)

Quoting from a treatise authored by Richard M. Pearl, Bui argues: "There is no requirement that a party attempt to obtain public enforcement before filing a lawsuit for which fees will be sought; the private enforcement requirement limits fees only when private enforcement is demonstrably unnecessary. [Citation.]" (1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2014) § 3.62, pp. 3-59 to 3-60.)[7] In support of this statement, Professor Pearl cites *Committee to Defend Reproductive Rights v. A Free Pregnancy Center* (1991) 229 Cal.App.3d 633 (*Committee to Defend*). In that case, the plaintiffs sought injunctive relief against a reproductive counseling center for alleged

---

[7] Bui also includes in this argument a purported quote from *Lyons*, *supra*, 136 Cal.App.4th at p. 1349 to the same effect. But the quotation does not appear in *Lyons*. Nor does it appear in any published California decision. In any event, *Lyons* is inapposite. There, the appellate court reversed an order denying attorney fees because, among other reasons, the trial court had erred in finding that the necessity of private enforcement was " 'questionable' " (*id.* at p. 1348) where there was a parallel prosecution of the defendants that achieved the same result obtained by the private litigant. (*Id.* at pp. 1348-1351.) In *Lyons*, the plaintiff "repeatedly sought to involve public authorities in prosecution of the defendants . . .[, and there was] no reason to believe that there would have been any prosecution without plaintiffs' efforts. Not only did plaintiffs' initiate the action that resulted in the district attorney becoming involved nearly a year after plaintiffs had first sought the district attorney's assistance, but they also shared with the district attorney the voluminous information they had obtained during a lengthy discovery process in [their] civil action." (*Id.* at p. 1349.) *Lyons* is factually distinguishable and does not support Bui's position that he established a necessity of private enforcement.

18

false advertising and unfair business practices.  (*Id.* at p. 635.)  A parallel action was filed by the San Francisco District Attorney's Office four months later, and the deputy district attorney handling that case gave credit to the private plaintiffs' attorneys for prompting the litigation brought on behalf of the People.  (*Id.* at p. 636.)  The trial court rejected the plaintiffs' motion for private attorney general fees, in part, because the plaintiffs did not contact the district attorney before bringing suit and, therefore, the private suit was " 'unnecessary.' " (*Id.* at p. 640.)  But the appellate court reversed, concluding:  "[T]he necessity of appellants' private pursuit of the present action is not foreclosed *merely because* they failed to obtain the approval of the district attorney before or after they filed the same, or solely on the basis of whether a subsequent similar action was filed by the People." (*Id.* at p. 641, fn. omitted, italics added.)  The court remanded the case for further consideration by the trial court, concluding the trial court had construed the necessity of private enforcement criterion too narrowly.  (*Id.* at pp. 645-646.)[8]

We agree with Professor Pearl and with the court in *Committee to Defend* that the failure to seek public enforcement does not *necessarily* preclude a private litigant's subsequent request for attorney fees under section 1021.5.  But, contrary to Bui's suggestion, *Committee to Defend* did not hold that it is *not relevant* for the court to consider a private litigant's presuit efforts to contact governmental authorities concerning public enforcement before filing a lawsuit.  Although inquiry into such presuit contacts may not be as germane when the defendant is a public agency that is itself responsible for

---

[8] A significant legal issue resolved by the appellate court in *Committee to Defend*—a circumstance not presented here—was whether the fact that a government entity had brought a separate action, one in which the private plaintiffs provided significant cooperation, barred the plaintiffs from recovering section 1021.5 attorney fees, irrespective of the significance of the plaintiffs' contribution in achieving the ultimate successful outcome of the litigation.  The court concluded that such circumstance did not automatically bar the plaintiffs' recovery of attorney fees, and that the trial court had therefore misinterpreted the necessity of private enforcement element of section 1021.5.  (*Committee to Defend*, *supra*, 229 Cal.App.3d at pp. 641-645.)

enforcing the law being challenged (see *Woodland Hills*, *supra*, 23 Cal.3d at p. 941), it is a relevant factor where, as here, a private litigant sues another private litigant for a matter that, on its face, is a suit for damages to redress a personal wrong. Whether a private litigant sought public enforcement to remedy alleged wrongful conduct before filing suit is not dispositive on the question of whether the private litigant may obtain attorney fees under section 1021.5. But it is relevant to determining whether private enforcement was necessary: A court in exercising its "equitable discretion . . . properly considers all circumstances bearing on the question of whether private enforcement was necessary." (*Vasquez*, *supra*, 45 Cal.4th at pp. 247-248.)[9]

Bui asserted at oral argument (and in his brief) that under *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 (*Graham*), the necessity of private enforcement prong is not a required element to be established by the party moving for section 1021.5 fees, but "can be presumed by the enforcement of important consumer protection statutes." *Graham* involved legal issues concerning section 1021.5 attorney fee awards not relevant to this case. The major issues decided by the California Supreme Court there were whether (1) under the "catalyst theory" (where attorney fees may be awarded even when litigation does not result in a judicial resolution if the defendant substantially changes its behavior because of, and in the manner sought by, the litigation),

---

[9] The second part of the above quoted sentence from Professor Pearl's treatise— that "the private enforcement requirement limits fees *only when private enforcement is demonstrably unnecessary*" (1 Pearl, Cal. Attorney Fee Awards, *supra*, § 3.62, pp. 3-59 to 3-60, italics added)—is not supported by the law. To the extent the author suggests there is a low threshold that the attorney fee claimant must meet to satisfy this criterion— or, more to the extreme, that it is the opponent's burden to demonstrate that "private enforcement is demonstrably unnecessary"—we disagree. The applicant bears the burden of establishing each criterion required for an attorney fee award under section 1021.5, including the necessity of private enforcement (*Ebbetts*, *supra*, 187 Cal.App.4th at p. 381), and the court must "consider[] all circumstances bearing on the question of whether private enforcement was necessary." (*Vasquez*, *supra*, 45 Cal.4th at p. 248.)

20

the plaintiff's lawsuit must have had some merit and the plaintiff must have made a reasonable attempt at presuit settlement; (2) the trial court abused its discretion in concluding that the lawsuit substantially benefited a large group of people or the general public; and (3) a plaintiff in a lodestar case is precluded from having its lodestar fees enhanced. (*Graham*, *supra*, 34 Cal.4th at pp. 560-561.) There is nothing in *Graham* that supports Bui's sweeping statement that the necessity of private enforcement can be presumed by the enforcement of consumer protection statutes. More importantly, such a presumption would be contrary to the established principle that the moving party bears the burden of establishing each element of a motion for attorney fees under section 1021.5. (See *Ebbetts*, *supra*, 187 Cal.App.4th at p. 381.) Bui's position that he is entitled to such a presumption is without merit.

Lastly, Bui argues that Dental Clinic failed to present an adequate record for this court's review of the attorney fee order. It is the appellant's burden to produce a record that demonstrates claimed error; failure to present such a record mandates that the claimed error be resolved against appellant. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [appellants' failure to procure adequate record of attorney fee proceedings mandated that their challenge be resolved against them].)

Dental Clinic here did not furnish a record of the trial proceedings, an omission about which we have commented above. (See fn. 4, *ante*.) Were this appeal a challenge to the reasonableness of the *amount of fees* awarded, this failure would be fatal to such a challenge. (See *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447-448 [affirming award of attorney fees under Government Code § 12965, where entitlement to fees not challenged and "the record provided by defendant is inadequate to conclude the trial court abused its discretion in determining the fee was reasonable"].) But this appeal concerns whether Bui *was entitled to* private attorney general fees, and Dental Clinic specifically challenges the absence of evidence supporting the element of the necessity of private enforcement. As to that question, the appellate record provided is

21

adequate, because the court's conclusion on the issue was based upon what was presented in the moving, opposition, and reply papers concerning the motion for attorney fees.[10] There is no indication that either the court's express findings that there had been prior governmental complaints about Dental Clinic that had not been acted upon, or its implied finding that public enforcement was inadequate, was based upon matters outside the record of the attorney fee motion. We therefore reject Bui's contention that the appellate record is inadequate to resolve this question.

### C. Conclusion

In the context of reviewing a trial court's decision whether to award private attorney general fees under section 1021.5, the California Supreme Court has explained: " '[D]iscretion may not be exercised whimsically and, accordingly, reversal is appropriate "where no reasonable basis for the action is shown." [Citation.]' [Citations.]" (*Baggett v. Gates*, *supra*, 32 Cal.3d at p. 143.) Here, there was no reasonable basis for the court's finding that Bui was entitled to private attorney general fees under section 1021.5. Bui was required to meet his burden of establishing each of the four criteria essential to a claim for section 1021.5 fees. (*Ebbetts*, *supra*, 187 Cal.App.4th at p. 381.) There was no substantial evidence presented from which the court could have reasonably concluded that the third criterion—necessity of private enforcement—had been met. (See *Frei*, *supra*, 124 Cal.App.4th at p. 1512 [abuse of discretion in attorney fee award will be found where no substantial evidence supports court's express or implied findings

---

[10] We express no view as to whether the appellate record is adequate to decide whether the trial court erred in finding that the other elements of a claim under section 1021.5 were satisfied, i.e., (1) whether Bui's obtaining injunctive relief conferred a significant benefit upon the general public or a large group of persons, and (2) whether the burden of private enforcement outweighed Bui's personal stake in the case.

22

necessary for its decision].)[11] The court therefore abused its discretion in awarding Bui private attorney general fees under section 1021.5.

DISPOSITION

The order awarding attorney fees pursuant to section 1021.5 is reversed.

---

[11] Because we hold that the court abused its discretion in finding that Bui had satisfied his burden of showing the necessity of private enforcement, we need not address Dental Clinic's remaining arguments that the court erred because of an absence of evidence supporting the other criteria of an attorney fee award under section 1021.5. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5.)

_____
                                         Márquez, J.

WE CONCUR:

_____
   Rushing, P.J.

_____
   Premo, J.

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.: 1-10-CV-161914 |
| Trial Judge: | The Honorable<br>Franklin Bondonno |
| Attorneys for Plaintiff and Respondent<br>Vien T. Bui: | Dumont Law Offices<br>Mary T. Dumont |
| Attorneys for Defendants and Appellants<br>Trang Kim Nguyen et al.: | Jaurigue Law Group<br>Michael J. Jaurigue<br>Nam H. Le<br>Christine M. Pham<br>Abigail Ameri Zelenski |