Filed 9/22/21  City of Duarte v. State Water Resources Control Bd. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF DUARTE, | |
| Plaintiff and Respondent, | G059469 |
| v. | (Super. Ct. No. 30-2016-00833614) |
| STATE WATER RESOURCES CONTROL BOARD et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Glenda Sanders, Judge.  Reversed.  Respondent's request for judicial notice.  Granted.  Appellants' request for judicial notice.  Granted.

Xavier Becerra and Rob Bonta, Attorneys General, Robert W. Byrne, Assistant Attorney General, Gary E. Tavetian and Daniel M. Lucas, Deputy Attorneys General, for Defendants and Appellants.

Rutan & Tucker, Richard Montevideo and Travis Van Ligten for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

A regional water board issued a permit requiring municipal entities within the region to reduce pollutants in their sewer systems. The state water board upheld this permit. Two of the municipal entities affected by the permit, the City of Duarte (Duarte) and the City of Gardena (Gardena), separately challenged the permit. After a bench trial, the court entered judgment in favor of Duarte and Gardena and issued separate writs of mandate requiring the water boards to delete certain terms from the permit and to reconsider it. The trial court then awarded to Duarte, Gardena, and certain other cities that had participated in the litigation their attorney fees pursuant to Code of Civil Procedure section 1021.5 (section 1021.5). The water boards filed separate notices of appeal from the judgments and the postjudgment orders awarding fees.

On the appeal from the judgment, this court reversed the judgment and directed the trial court to deny the petition for writ of mandate. (*City of Duarte v. State Water Resources Control Bd.* (2021) 60 Cal.App.5th 258 (*Duarte*).)[1] The California Supreme Court denied a petition for review and a request for depublication of the opinion.

The appeal from the postjudgment order awarding attorney fees to Duarte and certain other cities is now before us. Despite the reversal of the judgment originally in its favor, Duarte contends it is the successful party. Normally, the reversal of a judgment automatically requires reversal of an attendant attorney fees order. Duarte nevertheless argues it is still the successful party under the catalyst theory of recovery. For the reasons we explain, the catalyst theory does not support an award of attorney fees to Duarte. Therefore, we reverse the postjudgment order awarding attorney fees.

---

[1] This court also reversed the judgment in the Gardena case. (*City of Gardena v. State Water Resources Control Board* (Jan. 28, 2021, G058540) [nonpub. opn.].)

I.

*THE UNDERLYING PETITION*

In November 2012, the Regional Water Quality Control Board, Los Angeles Region (Regional Board) issued a National Pollutant Discharge Elimination System (NPDES) permit (the Permit) to 86 municipal entities in Los Angeles County (the Permittees). In 2015, the State Water Resources Control Board (State Board) upheld the Permit with modifications.[2]

The Permit defines the measures the Permittees must take to prevent or reduce the amount of pollutants discharged via their municipal separate storm sewer systems (MS4s) and includes numeric effluent limitations. Duarte, the named plaintiff in this case, owns and operates an MS4 and is one of the Permittees.

Duarte filed a petition for writ of mandate and complaint for injunctive and declaratory relief, alleging that the Water Control Boards failed to proceed as required by law and abused their discretion in imposing the numeric effluent limitations in the Permit. The trial court issued the writ of mandate and entered judgment in favor of Duarte, ordering the Water Control Boards to "[s]et aside each and every one of the provisions in the Permit pertaining in any way to any and all Numeric Effluent Limits, and to reconsider the Permit."

II.

*THE WATER CONTROL BOARDS APPEAL FROM THE JUDGMENT AND WRIT OF MANDATE*

The Water Control Boards filed a notice of appeal from the judgment, and this court reversed the judgment in a published opinion. (*Duarte, supra*, 60 Cal.App.5th 258.) In that opinion, we framed the issues before us as follows: "(1) Do the numeric effluent limitations in the Permit require more than is required under federal law?

---

[2] We shall refer to the State Board and the Regional Board together as the Water Control Boards.

(2) If so, did the Water Control Boards sufficiently consider the economic considerations factor required by Water Code section 13241 before issuing the Permit?" (*Id.* at p. 269.)

As to the first question, we concluded we did not need to reach the merits of the issue, and instead we "assume[d] without deciding that the Permit's requirement of numeric effluent limitations was more stringent than federal law." (*Duarte, supra*, 60 Cal.App.5th at p. 271.) As to the second question, we concluded that, "as a matter of law, the Water Control Boards sufficiently considered the necessary factors under Water Code section 13241." (*Id.* at p. 272.) Therefore, we reversed the judgment and remanded the matter to the trial court with directions to deny the petition for writ of mandate and enter judgment in favor of the Water Control Boards. (*Id.* at p. 277.)

III.

*MOTION FOR ATTORNEY FEES IN THE TRIAL COURT*

In October 2019, after the judgment was entered in the trial court but before this court issued its opinion reversing the judgment, Duarte filed a motion for attorney fees pursuant to section 1021.5. One month later, the Cities of Arcadia, Azusa, La Habra Heights, and Claremont collectively filed a separate motion for attorney fees in the Gardena action.[3]

In March 2020, the trial court issued a minute order granting the motions for attorney fees. The parties filed supplemental briefs, after which the trial court issued

---

[3] The appellate record does not explain why the trial court addressed the request for fees by these nonparties in connection with Duarte's case rather than Gardena's case. The Water Control Boards' opposition to the motion and a supplemental declaration by the attorney for these parties with additional information regarding the specifics of the claimed attorney fees are included in the appellate record in the Gardena appeal, No. G059466.)

4

another minute order specifying the amount of fees awarded:

| | |
|---|---|
| Duarte: | $1,423,059 |
| Arcadia: | $23,520 |
| Azusa: | $32,580 |
| La Habra Heights: | $18,780 |
| Claremont: | $26,880 |

The Water Control Boards filed a timely notice of appeal from the order awarding attorney fees.

The Water Control Boards' opening brief was filed before this court reversed the underlying judgment. The opening brief addressed whether, under section 1021.5, Duarte was acting in the public interest, or only in its own economic interest, in pursuing the action. By the time Duarte filed its respondent's brief, the judgment had been reversed; in addition to addressing the Water Control Boards' argument that it was not acting in the public interest in challenging the Permit, Duarte argued that the reversal of the judgment did not affect its entitlement to attorney fees. In their reply brief, the Water Control Boards addressed the effect of the reversal on the entitlement to attorney fees.

DISCUSSION

Section 1021.5, the private attorney general statute, "awards attorney fees to a party whose action has resulted in the enforcement of an important right affecting the public interest." (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 318.) There are four prerequisites for eligibility under section 1021.5: (1) the moving party's action results in enforcement of """"an important right affecting the public interest,"""" (2) the action confers a significant pecuniary or nonpecuniary benefit on the general public or a large class of persons, (3) a private action by the moving party was necessary to obtain the public benefit, and (4) the financial burden of the private enforcement action makes it appropriate to award the moving party its attorney fees.

5

(*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214; *Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1365.)  The party moving for an award of attorney fees under section 1021.5 bears the burden of establishing each element of the statute.  (*Bui v. Nguyen, supra*, at p. 1365.)

I.

*REVERSAL OF A JUDGMENT GENERALLY REQUIRES REVERSAL OF AN ATTORNEY FEES AWARD*

In general, California law provides that if attorney fees are awarded under section 1021.5 based on a party's success in litigation, and that success is negated by a reversal of the judgment, then the award of attorney fees must also be reversed.  "A party seeking an award of section 1021.5 attorney fees must 'prevail' or be 'successful,' which generally involves obtaining a favorable judicial decision, i.e., a judicially sanctioned or recognized change in the legal relationship of the parties.  [Citations.]  Fees are not barred if the case was won on a preliminary issue or if the parties settled before trial.  [Citation.]  However, *procedural success during the course of the litigation is insufficient to justify such attorney fees where the ruling is later vacated or reversed on the merits*."  (*Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867, 877, italics added.)

Other opinions consistently state and apply this principle:  "An order awarding [attorney] fees [under section 1021.5] 'falls with a reversal of the judgment on which it is based.'"  (*California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 220; see *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 613, fn. 4 ["even when there is no appeal of a postjudgment order awarding attorney fees to the prevailing party, and the award has become final, the appellate court's *reversal* of the judgment on the merits extinguishes the order on fees"]; *Klajic v. Castaic Lake Water Agency* (2004) 121 Cal.App.4th 5, 16 [reversal of judgment with directions to vacate writ of mandate means respondents were unsuccessful, and reversal of attorney fee award under section 1201.5 is "automatic"]; *Ryan v. California*

6

*Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1082 ["Because we reverse the judgment to the extent that Ryan prevailed, we must also reverse the postjudgment order that followed awarding attorney fees and costs to his counsel under section 1021.5"]; *National Parks and Conservation Assn. v. County of Riverside* (2000) 81 Cal.App.4th 234, 238 ["where an appellate court reverses a judgment ordering issuance of a writ of mandate, '[i]t follows' that the trial court's section 1021.5 attorney fees award must also be reversed"]; *Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1431, fn. omitted ["Under . . . section 1021.5, an award of attorney fees is limited to the successful party"].)

A narrow exception exists where the reversal of the judgment underlying the award of section 1021.5 attorney fees is a "*limited* reversal," in which case the appellate court should "remand for the trial court to consider anew the propriety of attorney fees *unless* we can say with certainty the court would have exercised its discretion the same way had the successful party not prevailed on the issue on which we reverse."  (*Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 307.)  In this case, the reversal of the judgment with directions to deny the petition for writ of mandate was not a limited reversal.

Duarte has not cited, and we have not found in our own research, any case that awards section 1021.5 attorney fees to a party when the judgment in that party's favor was unconditionally reversed on appeal.  This court's reversal of the judgment with directions to deny the petition for writ of mandate and enter judgment for the Water Control Boards negated Duarte's initial success in the litigation.

## II.

### THE CATALYST THEORY OF RECOVERY DOES NOT APPLY IN THIS CASE

In its respondent's brief, Duarte argues that, notwithstanding the reversal of the judgment and the writ of mandate, it is still the "successful" party within the meaning of section 1021.5.  Duarte bases this argument on the catalyst theory of recovery, under

which "an attorney fee award may be justified even when plaintiff's legal action does not result in a favorable final judgment. [Citations.]  It is also clear that the procedural device by which a plaintiff seeks to enforce an important right is not determinative of his or her entitlement to attorney fees under section 1021.5. [Citation.]  Similarly, a section 1021.5 award is not necessarily barred merely because the plaintiff won the case on a preliminary issue. [Citation.]  In determining whether a plaintiff is a successful party for purposes of section 1021.5, '[the] critical fact is the impact of the action, not the manner of its resolution.'" (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290-1291.)

In *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 (*Graham*), the California Supreme Court held that a plaintiff may recover section 1021.5 attorney fees "even when litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (*Graham, supra,* at p. 560.)  To be entitled to such recovery (1) the plaintiff must have been a catalyst to the defendant's changed behavior, (2) the lawsuit must have "some merit," and (3) "the plaintiff must have engaged in a reasonable attempt to settle its dispute with the defendant prior to litigation." (*Id.* at pp. 560-561.)

It is appropriate to take "a broad, pragmatic view" of success for purposes of application of the catalyst theory. (*Graham, supra,* 34 Cal.4th at p. 565.)  A party need not obtain a final judgment in its favor in order to be the successful party. (*Id.* at pp. 565-566.)  No case cited by Duarte, however, would support an award of fees under section 1021.5 to Duarte as a successful party in this case, where the judgment in its favor was reversed in its entirety.

Duarte nevertheless contends that it remains a successful party despite the reversal of the judgment "because it prevailed in acquiring a determination that the Boards are required to comply with state law when imposing discretionary terms [in MS4 permits]."  Further, Duarte contends that, "while the Court of Appeal's decision in the main appeal means that the 2012 LA MS4 Permit will stand, Duarte's lawsuit resulted in

8

a major legal victory in compelling the Boards to comply with State law when adopting permit[] terms that are not required by federal law, and 'vindicate[s] the principle upon which [Duarte] brought this action.'" (Quoting *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103.) These assertions are incorrect.

As noted *ante*, the issues in the prior appeal were whether the Permit required more than federal law requires in terms of numeric effluent limitations, and whether the Water Control Boards sufficiently considered the economic considerations factor of Water Code section 13241, subdivision (d). (*Duarte, supra,* 60 Cal.App.5th at p. 269.) Whether the Water Control Boards were required to comply with state law was not an issue in the case, as the Water Control Boards never contended that they were not required to do so. The issue was a factual one—whether the requirements of state law (in this case, the factors of Water Code section 13241) were applicable, and whether the Water Control Boards complied with them. We determined that the Water Control Boards had fully complied with Water Code section 13241, and that we did not need to weigh in on the factual issue of that section's applicability. (*Duarte, supra,* at pp. 271-272.)

In this case, Duarte's lawsuit did not cause the Water Control Boards to "change[ their] behavior substantially because of, and in the manner sought by, the litigation." (*Graham, supra,* 34 Cal.4th at p. 560.) Duarte contends that, as a result of its lawsuit, the Regional Board "has conceded it must now conduct a cost analysis of its pending Tentative [numeric effluent limitations] Permit terms." To the contrary, this court determined *as a matter of law* that the Water Control Boards had already performed the required cost analysis under Water Code section 13241, subdivision (d). (*Duarte, supra,* 60 Cal.App.5th at p. 274.)

Duarte argues that the tentative MS4 NPDES permit, which was submitted by the Water Control Boards for public comment in August 2020 (a few months after the trial court issued the attorney fees award), proves the Water Control Boards altered their

9

behavior as a result of Duarte's lawsuit.[4]  We have compared the Permit at issue in *Duarte, supra,* 60 Cal.App.5th 258, with the new tentative permit.  In the new tentative permit, the Water Control Boards provided a more extensive analysis of the potential economic considerations, particularly the potential costs of compliance, than the analysis in the Permit.  Indeed, the section on economic considerations in the Permit was eight pages in length; in the new tentative permit it is 50 pages in length.

It is significant, however, that in *Duarte, supra,* 60 Cal.App.5th 258, we held that the economic considerations included in the Permit were sufficient to comply

[4]  Duarte asks us to take judicial notice of the following:  (A) Notice of Opportunity for Public Comment on the Tentative Regional Phase I Municipal Separate Storm Sewer System (MS4) Permit, August 24, 2020; (B) excerpts from TENTATIVE Regional Phase I MS4 NPDES Permit, Order No. <R4-202X-XXXX>, NPDES Permit No. CAS004004, Waste Discharge Requirements and National Pollutant Discharge Elimination System (NPDES) Permit for Municipal Separate Storm Sewer System (MS4) Discharges within the Coastal Watersheds of Los Angeles and Ventura Counties; (C) Appellants' Opening Brief, appeal No. G058539, filed May 14, 2020; (D) Appellants' Reply Brief, appeal No. G058539, filed July 2, 2020; (E) this court's opinion in appeal No. G058539, as modified January 28, 2021; (F) Duarte's Request for Rehearing in appeal No. G058539, filed February 12, 2021; and (G) California Supreme Court's Order Denying Petition for Review, Supreme Court case No. S267477, April 28, 2021.

The Water Control Boards ask us to take judicial notice of the following:  (A) the unpublished opinion in *City of Arcadia v. State Water Resources Control Bd.* (Dec. 14, 2010, G042088); (B) Duarte's September 8, 2020 Initial Comments on Draft Regional Phase 1 MS4 Permit to the Regional Water Quality Control Board, Los Angeles Region; and (C) Duarte's December 4, 2020 Comments on Tentative MS4 Permit to the Regional Water Quality Control Board, Los Angeles Region.  Duarte filed no opposition to the Water Control Boards' request for judicial notice.

Duarte's exhibits C through G are documents filed in this court or the California Supreme Court in appeal No. G058539/S267477, the appeal from the judgment in this case, and are judicially noticeable.  (Evid. Code, §§  451, subd. (a), 452, subd. (d), & 459, subd. (a).)  The Water Control Boards' exhibit A is a court record, and the proper subject of judicial notice.  (Evid. Code, § 452, subd. (d)(1); *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 217-218, fn. 14.).

Although the Water Control Boards object, we will take judicial notice of Duarte's exhibit B because it is relevant to the analysis and application of the catalyst theory.  (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)  Likewise, we take judicial notice of Duarte's exhibit A and the Water Control Boards' exhibits B and C.  (*Ibid.*)

with Water Code section 13241 as a matter of law. The Water Control Boards did not violate Water Code section 13241 in the first instance; the litigation did not compel their compliance with the law, no matter how much more in depth the economic considerations section might be in the new tentative permit. Quite simply, the Permit was lawful as is. The new tentative permit is arguably more so, but that does not justify an award of attorney fees based on the catalyst theory. Indeed, Duarte does not concede the new tentative permit is itself lawful.

None of the cases cited by Duarte supports a different conclusion. In *Graham, supra*, 34 Cal.4th 553, the plaintiff truck owners sued the truck manufacturer based on false statements made regarding the truck's towing capacity, seeking a repurchase remedy. Before any judgment was entered, the manufacturer offered to repurchase the trucks. The Supreme Court concluded the plaintiffs had succeeded, but remanded to allow the trial court to consider the other prongs of the catalyst theory test. (*Id.* at p. 577.)

In *Maria P. v. Riles, supra*, 43 Cal.3d at page 1286, the plaintiffs obtained a preliminary injunction against enforcement of a statute. The statute was later essentially repealed, and the lawsuit was dismissed for failure to prosecute under Code of Civil Procedure section 583, subdivision (b). (*Maria P. v. Riles, supra,* at pp. 1286-1288.)

In *Harbor v. Deukmejian, supra*, 43 Cal.3d at page 1103, the petitioners were entitled to attorney fees even though the named plaintiffs did not personally benefit because "the impact of [the Supreme Court's] decision is to vindicate the principle upon which they brought this action, i.e., that the Governor's power to veto legislation cannot be exercised to invalidate part of a bill which is not part of an appropriation bill," and because the Supreme Court's "decision will result in enforcement of an important right affecting the public interest, conferring a 'significant benefit' on the general public in clarifying the extent of the Governor's veto power and emphasizing the inviolability by the Legislature of the one-subject rule."

11

In *Center for Biological Diversity v. California Fish & Game Com.* (2011) 195 Cal.App.4th 128, the plaintiff obtained a writ of mandamus requiring the public agency to reconsider its action. The agency then adopted new findings reaffirming its original decision. (*Id.* at pp. 133-134.) The Court of Appeal denied attorney fees to the plaintiff under section 1021.5 because the public interest was not enforced in a manner resulting in a "'significant benefit.'" (*Center for Biological Diversity v. California Fish & Game Com., supra*, at p. 139.)

In *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, the plaintiff's challenge to six of eight zoning law variances was successful. The city later amended the neighborhood area plan, and there was no final determination of the validity of the variances under the new plan. (*Id.* at p. 1154.) The Court of Appeal nevertheless awarded attorney fees to the plaintiff under section 1021.5 because "success" under that statute does not require that "the successful party put the entire dispute to rest for once and all." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles, supra*, at pp. 1159-1160.) Attorney fees can be awarded for "successes conferring a significant benefit before the matter is finally litigated." (*Ibid.*)

In *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 686-687, the parties entered into a settlement that required the government agencies to substantially perform what the plaintiffs had sought through litigation.

None of these cases involved the reversal of a judgment. In all of them, the party recovering attorney fees under the catalyst theory obtained a successful resolution of their claims.

The catalyst theory was developed to allow the trial courts to award attorney fees to plaintiffs who would otherwise be entitled to fees under section 1021.5 but who obtained their litigation goals without proceeding to a final judgment. The

catalyst theory does not apply to Duarte, which obtained a judgment in its favor, only to have that judgment reversed on appeal.

In light of our holding, we need not address the additional issues raised by the parties, including whether Duarte was acting in its own economic interest in pursuing the litigation, whether Duarte's financial interest to pursue litigation precludes an award under section 1021.5, whether the Water Control Boards waived their ability to challenge the total amount of the fees awarded by the trial court, and whether Duarte engaged in a reasonable attempt to settle the dispute before initiating the litigation, as required under the catalyst theory.

DISPOSITION

The postjudgment order awarding attorney fees is reversed. Appellant to recover costs on appeal.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.